BROWN v. McCULLOCH et al.—144 S. W. (2d) 1.

Eastern Section.   April 6, 1940.

Petition for Certiorari Denied by Supreme Court, October 6, 1940.

Thomas, Folts & Brown, of Chattanooga, for appellant.
Sizer, Chambliss & Kefauver, of Chattanooga, for appellee.

PORTRUM, J.   The appellant and complainant, Mary R. Brown, sues the defendants H. H. McCulloch and others in her own behalf and for other Tennessee stockholders of the Franklin Savings & Loan Bank, Incorporated, a Tennessee corporation, to recover upon a bond executed by the corporation and by the defendants, its officers, as sureties to the State Department of Insurance and Banking.

The determinative question presented is whether the bond was executed by the corporation and the defendants as sureties voluntarily or involuntarily, or because of duress imposed upon them by the representatives of the Department of Insurance and Banking, it being conceded that the department had no legal right to require the bond as a prerequisite to selling its stock under the Blue Sky Law, Code 1932, Sec. 6056 et seq., as it was attempting to do, and that the bond is not an official bond. If it is a valid bond it must be held to be a common law bond, and before it can be held to be a common law bond it must be established that it was executed

voluntarily. State v. Tutt, 175 Tenn., 412, 135 S. W. (2d), 449. The instrument reads:

"Bond for Blue Sky Company

"State of Tennessee }
"County of Hamilton}

"Know all men by these presents: That we, the undersigned, being officials of the Franklin Savings & Loan Bank and the said Franklin Savings & Loan Bank as principals, and we ————, as sureties, do hereby acknowledge ourselves officially and individually held and firmly bound unto the Department of Insurance and Banking, State of Tennessee, for the use and benefit of the Tennessee stockholders in the sum of $34,335.00, conditional that all moneys arising out of the sale of the stock of said company in the State of Tennessee, shall be faithfully and honestly held in trust and accounted for, or expended in the purposes for which the company was organized.

"In the event that the moneys arising out of or received from the sale of stock of said company in the State of Tennessee shall be faithfully and honestly expended for the purposes for which the company was organized or accounted for in liquidation, then this bond shall be null and void. Otherwise to remain in full force and effect. In the event of a breach of the above bond any stockholder may bring suit against the principals or sureties, or both on the bond and for the amount that has not been faithfully and honestly accounted for or expended for the purposes for which the company was organized.

"Witness our hand this the 11th day of January, 1932."

Prior to the institution of this suit the company or corporation had gone into bankruptcy, and neither it, nor its trustee, is a party to this suit. The condition of the bond is breached by the irregular if not maladministration of the funds derived from the sale of stock.

The Chancellor in his memo opinion found the following facts:

"On July 2, 1931, R. E. McNellis, then manager of the Blue Sky Division of the Department of Insurance and Banking, learned that the Franklin Savings '&Loan Bank was selling and offering for sale stock in the bank, and notified the bank on that day that it would have to comply with what is known as the Blue Sky Law of Tennessee.

"The attorney for the bank advised the bank, and properly so, that it was not required by said act to give a bond. Notwithstanding this position, the Department of Insurance and Banking insisted that the bank qualify for the sale of its stock and advised the officials of the bank that if they did not comply, the officials would be prosecuted for the violation of said act, and demanded of the bank that it execute a bond.

"There is a stipulation of facts in this case, and it does not show on what date the department notified the officers that unless they complied with the Blue Sky Law they would be prosecuted, but it is proper to assume that it was in the demand of July 29, 1931. The bond was not executed until the 11th day of January, 1932, which was some six months after the demand was made. It is admitted by all parties that there was no provision in the law to require a corporation like the Franklin Savings and Loan Bank to give a bond, and that the bond was required without authority of law. The defendants in this case executed said bond and became sureties thereon.

". . . The complainant in this case was a stockholder in the Franklin Savings and Loan Bank, and brings this suit as stockholder for the benefit of herself and all other stockholders in the State of Tennessee.

"Defendants filed an answer and denied liability on the bond, on the theory that it was not authorized by law and was made under duress—in other words as stipulated, that McNellis of the Department of Insurance and Banking, advised them that 'if they did not secure a permit for the sale of said stock, the bank and its officials would be prosecuted for a violation of said act.' (Blue Sky Law.) And for this reason the bond was executed under duress and, therefore, they were not liable. This bond, while not authorized, was good as a common law obligation unless it was procured by duress.

"There is a stipulation of facts in this case that covers the question to be decided by the court as to whether or not this bond was executed under duress. . . .

"The court is unable to see how it would be held that the execution of the bond was voluntary when the permit to sell its stocks, which it wanted to do, would not be issued unless the bond was given, and unless the bond was given the officers of the bank could be prosecuted for the acts already committed. . . .

"If the execution of the bond was not voluntary, and the court is of the opinion that it was not, then it must have been under duress and if under duress then the bond would not be binding on the makers thereof. The court is of the opinion that it was under duress and that the makers of the bond are not liable thereon. . . ."

The appellant insists that the bond was a voluntary bond good as a common law bond, but if not and it was executed under duress then that the defendants could not rely upon this defense for several reasons set out in the assignments which will be hereafter noted.

We will deal first with the question of whether or not the bond was voluntary. It is insisted that the demand was made by the department, under threat of prosecution, in July, 1931; that in the fall of the same year the Supreme Court handed down an opinion in the case of Talbot v. Automobile Identification Under-

writers, 163 Tenn., 256, 43 S. W. (2d), 220, holding that a similar bond as required by the department was not an official but a common law bond; which holding put the department and the defendants upon notice of the law, and that the Commissioner had no right to exact the bond, and since the bond was executed the following January after the adjudication, then its execution could not be based upon the prior demand of the Commissioner; and further, the fact that the Commissioner or the defendants may not have known of the adjudication does not affect the case for the ignorance of law excuses no one. This is a plausible contention, and had it been developed by proof it might have appeared that the Commissioner had been advised of the holding of the Supreme Court and he no longer demanded the execution of the bond; but the stipulated facts reflect the conclusion that the Commission was not advised of the law for it is stipulated that the bond was executed upon the demand of the Commissioner. The stipulation reads: ''As a part of the requisite of qualification, said department, through its administrative officers, demanded the execution of the bond which is an exhibit to complainant's bill.''

Stipulations are to be encouraged for they save much expense and time of counsel and the courts, and they should be construed in view of the issues involved in the pleading. The defense was that the bond was exacted under threat of prosecution, and it was agreed in the stipulation that the bond was demanded. Now it is insisted that the bond was demanded in July, 1931, and the court should not construe the stipulation to mean that the demand continued to the date of the execution of the bond. In other words, the bond was demanded at a prior date, but since the opinion in the Talbot case, supra, there was no demand at the date of the execution of the bond. To so construe it destroys it as a stipulation on the part of the defendants and leaves it incumbent upon them to establish by proof the defense relied upon, and it was the purpose of the stipulation to eliminate the taking of this proof. The contention now relied upon was not in the minds of the parties then and we think the purpose of the stipulation was to establish that a demand was made at the date of the execution of the bond. We hold that it is established by the stipulation that the bond was executed upon a demand by the Commissioner under a threat of criminal prosecution.

Conceding these facts to be true, it is argued that the bond was not executed under duress, for since the decision in the Talbot case the defendants knew that it could not be required of them and they necessarily executed it voluntarily. They had been advised by counsel that it was not legally required of them, and the Chancellor held that they knew they were not bound by law to execute the bond; ordinarily this knowledge would be a good defense against

coercion or duress in the execution fo an instrument between parties, but the facts of this case are different from the ordinary case. A corporation that goes upon the open market for the sale of its capital stock cannot afford an unauthorized public prosecution under the Blue Sky Law. The act derived its name from the common practice of selling stock which had no more value than an interest in the blue sky. It is true the Commissioner could not require the corporation to execute a bond by a proceeding at law, but by the institution of the proceeding it could destroy the value of the stock or the market for the sale of the stock. The corporation and its officers were confronted with this threat of destruction and there was no other escape but the execution of the bond. The fact that the corporation knew that the bond was not required of it as a matter of law and yet executing the bond indicates clearly, in view of the facts confronting it, that it executed the bond to protect itself against this impending destruction. It was not the threat of prosecution that induced it to sign the bond, but impending publicity incident to it which would have destroyed the market for the stock. This was sufficient to coerce the ordinary·prudent person and destroy his free will, and it will not be presumed that he would voluntarily execute the instrument for the purpose of creating a better market. It is not shown that any prospective purchaser was ever told of the existence of this bond, and had this been its purpose it could have been easily established by the proof.

"Voluntary—In Law; Proceeding from the Free and Unrestrained Will of the Person." Century Dictionary. "The voluntary act is: One that proceeds from one's own free will, done by one's choice. or one's own accord, unconstrained by external inferences, force or influence, and not prompted or suggested by another." 67 C. J., 274.

We concur with the holding of the Chancellor that the bond was not the free and unrestrained act of the defendants, and since it was not voluntarily executed it is not good as a common law bond.

"Repeatedly in these cases it is said that bonds such as we are considering, to be enforceable as common law obligations, must have been voluntarily executed. If any such bond is exacted by a public official, under color of his office, without warrant of law, it is not good in any aspect. Such is the general rule. 8 Am. Jur., 722, 11 C. J. S., Bonds, page 413, Sec 26; 9 C. L.. 28." State v. Tutt, 175 Tenn., 412, 135 S. W. (2d), 449, 450.

The bond not having been executed voluntarily, it could never become an enforceable common law bond by the lapse of time or the failure to take legal steps to have it declared void except by way of an estoppel. The appellant would have derived no benefit from a suit instituted either before or after the execution of the bond. If the makers permitted it to be used to the detriment of another then they would be estopped to question its validity, but in

this case no one knew of its existence nor acted upon it. It is said that the Commissioner was not the agent of the appellant and she was not bound by his coercion in exacting the bond. The principle here to be applied is that one claiming under a fraudulent instrument after knowledge of the fraud adopts the fraud and becomes bound by it. And it is claimed that innocent parties to an instrument, or for whose benefit the instrument is made, are not bound by a coercion exercised by third parties not the agent or representative of the party. This is generally true, for instance the grantee of a deed, or a party to a contract, is not bound by a coercion exercised by a third party not a contracting party who coerces the grantor or the parties to be bound to execute the instrument. This principle has no application here. It is insisted that this bond was a third-party beneficiary contract, that the Commissioner was acting for and on behalf of the purchasers of the stock. This is true (Talbot v. Automobile Identification Underwriters, supra), but there being three parties to the contract he was one of them, and he cannot be classified as a third party who has no contractual relationship.

It is said that duress was not established because it is not shown by "the attending facts and circumstances" surrounding the execution of the bond, nor the actor's lack of intelligence, experience, and force of will as is required in such cases. We think the stipulations dispense with these incidental facts which would tend to establish the facts stipulated.

While the bond required in the Talbot case by the Commissioner was similar to the bond here, and it was enforced by the court, nevertheless the case is not controlling in this case for the reason that the questions presented are not the same. No issue was raised upon whether the bond was voluntarily or involuntarily executed. The court did not discuss this issue while it did discuss the issue in the later case of State v. Tutt, supra, and laid down the rule which controls the issue here. It is said that this case should be remanded for further proof since the case of State v. Tutt, supra, was remanded; in that case the trial was upon a demurrer, and here the facts were developed to the satisfaction of the parties before the case was submitted to the Chancellor.

The decree of the lower court is affirmed with costs.

Ailor and McAmis, JJ., concur.