STATE ex rel. McCORMACK, Commissioner of Insurance, v. NATIONAL BOND & MORTGAGE CO.—
168 S. W. (2d) 488.

Middle Section. September 26, 1942.

Petition for Certiorari denied by Supreme Court, January 30, 1943.

126

Gray & Gray, of Brownsville, and Holmes & Holmes, of Trenton, for appellant.

Albert Williams and Joe Brown Cummings, both of Nashville, for appellee.

FELTS, J. The principal suit herein was brought in the name of the State on relation of James M. McCormack, Commissioner of Insurance, against the National Bond & Mortgage Company, a Tennessee corporation, to liquidate its affairs as an involvent investment company, pursuant to Code, sections 6056-6068.

In the course of the proceedings Howard Powell and others who had purchased from the National Bond & Mortgage Company certain of its series A bonds, intervened and filed a cross bill against the company and the sureties on the bond it had deposited with the Department of Insurance and Banking, Blue Sky Division, to qualify itself as an investment company. Cross-complainants sought a decree on this bond for the difference between the respective amounts they had paid on the purchase of the bonds and the amounts received by them in the liquidation of the insolvent company's assets. The sureties answered and denied that the bond had been breached or that they were liable.

The chancellor found and decreed that no breach of the bond had been alleged or proved; that the bond was not executed and deposited with the Insurance Commissioner as a pledge or security for the stocks and bonds to be issued and sold by the National Bond & Mortgage Company; but that the bond had been exacted of the company by the Commissioner, under color of his office, without authority of law, as a condition precedent to the company's selling stocks and bonds, and the bond was not voluntarily executed, and was therefore invalid and unenforceable. And the chancellor dismissed the cross bill.

Cross-complainants appealed and insist that the bond was not executed involuntarily or under duress; and that it was intended to secure the bonds purchased by them

and the sureties should be held liable to them for the loss resulting from the insolvency of the company.

It is true that there was no provision of the statute authorizing the Commissioner to require the execution and delivery of the Blue Sky Bond to the Insurance Department, as a condition of the company's right to sell its stocks and bonds. Brown v. McCulloch, 24 Tenn. App., 324, 144 S. W. (2d), 1. It is likewise true that if the Commissioner had no warrant in law to exact the bond and if the bond was in fact so exacted and executed involuntarily or under duress, it would be invalid. State, for use of Moore v. Tutt, 175 Tenn., 412, 135 S. W. (2d), 449. But although there was no statute requiring the execution and delivery of the bond, if the company and the sureties actually executed it voluntarily, it would be a good common law bond. State, for use of Moore v. Tutt, supra; Talbot v. Automobile Indem. Underwriters, 163 Tenn., 256, 42 S. W. (2d), 220. All the record shows as to the circumstances of the execution of the bond is that for many years it had been a custom of the Commissioners of Insurance to require Blue Sky Bonds in the form of that executed by the company and the sureties in this case. But we think this custom can hardly warrant the conclusion that the bond in this case was involuntarily executed.

The extent of the sureties' undertaking in the bond is measured by its words, which were as follows:

"Bond for Blue Sky Company

"State of Tennessee

"County of Davidson

"Know All Men by These Presents.

"That we, the undersigned being officers of the National Bond and Mortgage Company and the said National Bond and Mortgage Company as principals, and we,

C. P. Moore, E. F. Vogelpohl, H. B. Morris, W. H. Eagle, R. E. McNellis, as sureties, do hereby acknowledge ourselves officially and personally held and firmly bound into Department of Insurance and Banking, State of Tennessee for the use and benefit of the Tennessee investors in the sum of $100,000.00 conditioned that all monies arising out of the sale of the stock-bonds of said company in the State of Tennessee, shall be faithfully and honestly held in trust and accounted for, or expended in the purposes for which the company was organized.

"In the event the money arising out of or received from the sale of the stock-bonds of said company in the State of Tennessee shall be faithfully and honestly expended for the purposes for which the company was organized or accounted for in liquidation, then this bond shall be null and void. Otherwise to remain in full force and effect. In the event of a breach of above bond any investors may bring suit against the principals or sureties, or both on the bond and for the amount that has not been faithfully and honestly accounted for or expended for the purposes for which the company was organized.

"Witness our hand this 6th day of January, 1932.

"Sureties:                    Principals:
/s/ C. P. Moore               National Bond and
    R. E. McNellis            Mortgage Company
    E. F. Vogelpohl           /s/ R. E. McNellis"
    W. H. Eagle
    H. B. Morris

Thus the condition of the bond was "that all monies arising out of the sale of the stocks and bonds of said company . . . shall be faithfully and honestly held in trust and accounted for, or expended in the purposes for which the company was organized." If this was done the bond was to be null and void. It was neither alleged in the cross bill nor shown in the proof that all monies

arising out of the sale of stocks and bonds of the company had not been faithfully and honestly held in trust and accounted for, or expended for the purposes for which the company was organized . That is to say, no breach of the bond was alleged or proved.

The series A bonds purchased by cross-complainants bore this recital:

"This bond is secured by a pledge of first mortgages on real estate, government or municipal bonds, cash or other approved securities deposited with the State of Tennessee Department of Insurance & Banking, Blue Sky Division, in an amount of $110.00 for each $100.00 of liability of this company under this bond."

▮▮▮▮ Appellants argue that since there were no first mortgages on real estate, no government or municipal bonds, and no cash deposited with the Department, the bond sued on must be held to be "other approved securities" deposited to secure the bonds. We cannot follow this argument. The words of the bond are plain and unambiguous and they measure the extent of the obligation of the sureties thereon. Such obligation cannot be extended beyond the plain terms of the bond. Peoples Bank v. Elizabethton Trust Co., 23 Tenn. App., 288, 291, 130 S. W. (2d), 989, 991. The fact that this recital above quoted was not true, did not constitute a breach of the bond; and the fact that the company became insolvent and loss resulted to cross-complainants, did not constitute a breach of the bond.

Holding, as we do, that no breach of the bond was alleged or proved, we must on this ground affirm the chancellor's decree. The costs of the appeal are adjudged against cross-complainants and the surety on their appeal bond.

Hickerson, J., concurs.

Howell, J., not participating.