In re George Victor LANCTOT and Charlotte Nadine Lanctot, Debtors.

Harriet E. STYLER, Trustee, Plaintiff,

v.

LOCAL LOAN FINANCIAL SERVICES, a Utah Corporation, George Victor Lanctot and Charlotte Nadine Lanctot, Defendants.

Bankruptcy No. 80–00264.

Civil Proceeding No. 80–0078.

United States Bankruptcy Court, D. Utah, C. D.

Oct. 10, 1980.

Barbara H. Dabney, Salt Lake City, Utah, for debtors and intervening defendants, George Victor and Charlotte Nadine Lanctot.

Harriet E. Styler, Salt Lake City, Utah, for herself as plaintiff–trustee.

Berk Washburn, Salt Lake City, Utah, for defendant Local Loan Financial Services.

## MEMORANDUM DECISION AND ORDER

RALPH R. MABEY, Bankruptcy Judge.

On June 13, 1979, Local Loan Financial Services (Local Loan) loaned money to the Lanctots for the purchase of two Suzuki motorcycles in accordance with the terms of a purchase money security agreement signed by the parties. The lien was never properly noted on the certificates of title covering the motorcycles as required by Utah Code Ann. §§ 41–1–80 et seq. (Supp. 1979), and thus, Local Loan's security interest was never perfected. The Lanctots encountered financial difficulty and on February 26, 1980, filed a Chapter 7 bankruptcy petition claiming the motorcycles as exempt. At the Section 341 meeting of creditors on March 24, 1980, the Lanctots delivered unencumbered titles to the motorcycles to the trustee. Some three days later, the trustee informed the Lanctots that she claimed an interest in the motorcycles superior to theirs. On April 12, 1980, the trustee filed an adversary proceeding pursuant to 11 U.S.C. §§ 544 and 551, alleging that Local Loan had failed to perfect its security interest in the motorcycles and, therefore, the trustee was entitled to set aside Local Loan's interest in the motorcycles and to preserve the lien for the benefit of the estate.

Local Loan stipulated that an order could be entered granting the trustee the relief sought in the complaint. On May 2, 1980, the Lanctots received copies of the proposed stipulation and order avoiding the claimed security interest of Local Loan and also a Notice to Sell and Receipt by Auctioneer. On the same day, the Lanctots moved to intervene in the adversary proceeding, requesting the Court to stay the sale pending a determination by the Court that the exemptions claimed by the Lanctots were valid and superior to the interest asserted by the trustee.

On May 6, 1980, the Court heard arguments on the Lanctot's motion to stay. In

response, the Court suspended the trustee's efforts to sell the motorcycles and took under advisement the matter of the exemptions claimed by the Lanctots. Subsequently, on May 13, 1980, the trustee moved for an order extending the time within which to file objections to the property claimed as exempt until fifteen days after a decision on the pending motion was made by the Court. The Court ruled that under the circumstances, the filing of the complaint by the trustee, of which the Lanctots had actual notice within the 30 day period set by the local rules, constituted a timely objection under Local Rule 25 to property listed by the debtors as exempt. The motion for an extension in which to file the objection was, therefore, denied as unnecessary.

Under Utah law, a security agreement becomes enforceable once three basic requirements are met. First, the collateral must be in the possession of the secured party or the debtor must sign a security agreement which contains an adequate description of the collateral. Second, value must be given. Third, the debtor must acquire rights in the collateral. *See* Utah Code Ann. § 70A–9–203 (Supp.1979). As between the Lanctots and Local Loan, the security interest attached and became enforceable as soon as the Lanctots signed the loan agreement, Local Loan advanced the money to the Lanctots, and that money was used to purchase the motorcycles. As the money advanced was used to purchase the collateral, a purchase money security interest was created under Utah Code Ann. § 70A–9–107 (1968).

In Utah, a security interest in a motor vehicle required to be licensed must be filed with the motor vehicle division of the state tax commission in order to be perfected. *See* Utah Code Ann. § 70A–9–302(d) (Supp. 1979) and Utah Code Ann. §§ 41–1–80 *et seq.* (Supp.1979). Perfection of an interest is important only to insure priority of the lien over intervening third parties. The absence of perfection does not affect, however, the enforceability of the lien against the parties to the transaction. Thus, even without a subsequent filing to perfect the security interest, the security interest became valid and enforceable against the Lanctots, as parties to the transaction, from the date on which the last of the three requirements for attachment occurred.

The unperfected security interest is, however, vulnerable to attack by certain third parties. These parties are granted priority over an unperfected security interest even though their interests arise subsequent in time. *See* Utah Code Ann. § 70A–9–301 (Supp.1979). One such party designated in Utah Code Ann. § 70A–9–301(1)(b) as taking priority over an unperfected security interest is "a person who becomes a lien creditor before the security interest is perfected." Section 70A–9–301(3) includes in its definition of a lien creditor, "a trustee in bankruptcy from the date of filing of the petition." Thus, under state law, the trustee is granted priority over the unperfected lien of Local Loan.

Under 11 U.S.C. § 544(a)(1), the trustee is granted certain avoiding powers in addition to his or her rights under state law.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists.

Thus, as a hypothetical judicial lienholder who obtains his lien as of the date of filing the petition in bankruptcy, the trustee may avoid the unperfected security interest of Local Loan. Under 11 U.S.C. § 551, the lien is then automatically preserved for the benefit of the estate of the debtor. Thereafter, Local Loan has claim only as an unsecured creditor of the estate.

The Lanctots claim the motorcycles in question as exempt property under 11 U.S.C. § 522(d)(5), which reads:

(d) The following property may be exempted under subsection (b)(1) of this section:

(5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection in any property.

This provision preserves for the debtor his "aggregate interest" in property of up to $400 plus the unused portion of the $7500 exemption allowed in subsection (d)(1). To exempt property, however, the debtor must first have an "aggregate interest" in the property, which means he must have right to the property or a portion of the property which is prior to all others. As the lien of Local Loan exceeds the value of the motorcycles, unless the Lanctots can claim an interest prior to Local Loan and to the trustee, who may avoid and then preserve Local Loan's lien for the benefit of the estate, they have no interest to exempt.

It is clear that under state law, the Lanctots are still subject to the security interest of Local Loan despite its failure to perfect. Therefore, to claim the property as exempt, free and clear of that lien, they must either have some right under the Bankruptcy Code to avoid directly the creditor's lien on their property or they must be entitled to derive the benefit of the trustee's avoiding powers over an unperfected lien. The rights of the debtor to either avoid liens on property claimed as exempt or to claim the benefit of liens avoided by the trustee on their exempt property are found exclusively in 11 U.S.C. § 522, which governs exemptions.

Under the exemption statute, 11 U.S.C. § 522, the debtor may avoid certain liens on exempt property. Section 522(f) reads:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (h) of this section if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase–money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

The purpose of subsection (f) is discussed in H.R.Rep.No. 95–595, 95th Cong., 1st Sess., at 362 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6318.

Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase–money security interest in certain household and personal goods. The avoiding power is independent of any waiver of exemptions.

Paragraph one of subsection (f) permits the debtor to avoid a judicial lien which impairs exempt property. A judicial lien is defined at 11 U.S.C. § 101(27) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." The term "lien" is further defined in Section 101(28) as a "charge against or interest in property to secure payment of a debt or performance of an obligation." The nature of this definition of "lien" is described in H.R.Rep.No. 95–595, *supra* at 312, U.S.Code Cong. & Admin. News 1978, p. 6269, as follows:

The definition is new and is very broad ... It includes inchoate liens. In gener-

al, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. *Those three categories are mutually exclusive except for certain common law liens.* (Emphasis supplied)

Not only does Local Loan's lien fail to meet the plain definition of a judicial lien inasmuch as defendant had not commenced any process attempting to levy, sequester, or obtain a judgment, legal or equitable, against the motorcycles, from this legislative history, it is evident that as Local Loan holds a security interest as defined in 11 U.S.C. § 101(37), its lien cannot be a judicial lien. Therefore, the unperfected security interest of Local Loan in the motorcycles cannot be set aside by the Lanctots under Section 522(f)(1).

Likewise, Section 522(f)(2) is inapplicable on these facts. The opening clause of this paragraph permits the debtor to avoid liens which impair exempt property, if such lien is "a nonpossessory, nonpurchase–money security interest ..." in certain personal property. As discussed above, the loan arrangement between the Lanctots and Local Loan constituted a purchase money security interest under Utah Code Ann. 70A–9–107 (1968). Furthermore, a motorcycle is not the type of personal property enumerated in Section 522(f)(2).

Subsection (g) of Section 522 permits the debtor, under certain conditions, to exempt property which the trustee recovers through the exercise of his or her avoiding powers. Subsection (g) reads:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if–

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(2) of this section.

In 3 Collier on Bankruptcy § 522.08, at 522–31 (15th ed. 1979), a summary of Section § 522(g) is given in these words:

Where the trustee recovers property fraudulently conveyed or concealed, the debtor may not claim exemptions out of the recovered property. The transfer need not be fraudulent to defeat the debtor's right to claim an exemption in such property. Section 522(g) provides that such transfer need only be voluntary. This section lists the various sections of the Code upon which the trustee may recover transferred property. Thus, the trustee may recover property if a transfer is avoided, or if the property is held by a custodian. If the debtor may exempt property held by an entity other than a custodian, such property may be recovered by the trustee. Additionally, the trustee may order any subordinated lien returned to the estate. Ordinarily, under section 522(g), in such recoveries of property, a claim of exemption would attach. *This is not the case, however, when the transfer was voluntary by the debtor.* (Citations omitted.) (Emphasis supplied.)

Thus, in order for the Lanctots to make use of Section 522(g)(1), they must show that the transfer was not voluntary and that they did not conceal the property. Since the motorcycles were accurately listed on debtor's Schedules B–2 and B–4, there was no concealment. Likewise, the voluntary nature of the transaction is undisputed. That the transaction constituted a "transfer" is apparent from the statute.

Section 101(40) defines transfer as meaning "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." Even though Local Loan did not retain title in this case, with the acquisition of its security interest in the property, a transfer was made. In which party title vests is not a consideration in finding a transfer. H.R.

Rep.No. 95–595, *supra* at 314, U.S.Code Cong. & Admin. News 1978, p. 6271, states:

> Under this definition [Section 101(40)], any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control *even if there is no transfer of title*, because possession, custody and control are interests in property. (Emphasis supplied.)

*See* Utah Code Ann. § 70A–9–202 (1968). Thus, the Lanctots are not entitled to claim the benefit of section 522(g)(1) in this case.

The findings of this Court are supported in *In re Saberman*, 1 C.B.C. 671, 676, 3 B.R. 316 (Bkrtcy., N.D.Ill.1980), where the bankruptcy court stated that "a purchase money interest, albeit under an improper U.C.C. filing, is nonetheless a voluntary transfer by the debtor who cannot, therefore, assert a trustee's power to avoid a statutory lien under sec. 522(g) and 522(h)." At 3 Collier on Bankruptcy § 522.08, at 522–32 (15th ed. 1979), this Court's interpretation is again reinforced:

> Section 6 of the Act provided that the debtor was not entitled to an exemption from property that he had transferred or concealed except for the amount that was in excess of what was needed to secure the claim of the transferee. Under the Act, therefore, whenever the trustee recovered property transferred or concealed by the debtor, the debtor would not be allowed to amend his schedules and claim his exemptions out of that particular property, save in the exception noted above. It was the policy of section 6 that the debtor should not profit at the creditor's expense from the trustee's efforts in undoing the debtor's own acts.
>
> This policy is continued by section 522(g). Unlike the provision in section 6 of the Act which disallowed exemptions in property transferred by the debtor that the trustee recovered, section 522(g) makes it clear that exemptions will be disallowed in transferred property only if the transfer was voluntary. The debtor will not lose his exemption, therefore, if the property was involuntarily transferred, as *e. g.*, through the enforcement of a lien.

11 U.S.C. § 522(g)(2) permits the debtor to exempt property recovered by the trustee to the extent that the debtor could have avoided the transfer himself under Section 522(f)(2). As previously discussed, on these facts, the avoiding powers of Section 522(f)(2) are unavailable to the Lanctots. Therefore, the Lanctots cannot claim the benefit of the trustee's avoiding powers under Section 522(g)(2).

11 U.S.C. § 522(h) is likewise inapplicable. Subsection (h) empowers the debtor, on conditions, to "avoid transfer of property of the debtor or recover a setoff *to the extent that the debtor could have exempted such property under subsection (g)(1) of this section* if the trustee had avoided such transfer . . ." (Emphasis supplied.) Since subsection (g)(1) does not allow the Lanctots to avoid the voluntary transfer to Local Loan, they cannot proceed under subsection (h).

Finally, subsection (c) provides no grounds for claiming an exemption free and clear of Local Loan's lien. It states:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case *for any debt of the debtor that arose or that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, except*
>
> (1) a debt of a kind specified in section 523(a)(1) or section 523(a)(5) of this title; or
>
> (2) a lien that is
>
> (A) not avoided under section 544, 545, 547, 548, 549 or 724(a) of this title;
>
> (B) not voided under section 506(d) of this title; or
>
> (C)(i) a tax lien notice of which is properly filed; and
>
>> (ii) avoided under section 545(2) of this title.

The legislative history of section 522(c) as contained in both H.R.Rep.No. 95–595, *supra* at 361, U.S.Code Cong. & Admin. News 1978, p. 6317, and Sen.Rep.No. 95–989, 95th Cong., 2d Sess., at 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5862, clarifies this section's meaning as follows:

Subsection (c) insulates exempt property from prepetition claims, except tax and alimony maintenance or support claims that are excepted from discharge. The bankruptcy discharge will not prevent enforcement of valid liens.

A reading of this subsection and its legislative history reveals an intent not to provide additional powers of exemption to the debtor, but rather to provide a statement of the law respecting the rights of a debtor in property which has been allowed as exempt. Under prior law, all exemptions were state exemptions which were protected from certain claims by state law. With the advent of federal exemptions under 11 U.S.C. § 522(d), section 522(c) was presumably passed to provide a clear statement of the extent of federal protection given to the new federal exemptions. This understanding is consistent with the spirit of the new Code in providing additional control to the bankruptcy court of many matters formerly left entirely under the jurisdiction of state law. *See, e. g.*, 11 U.S.C. § 524(c). Thus, subsection (c) does not provide the debtor with an exemption power, but rather protects property which has already been exempted.

The wording of subsection (c) reinforces this position, for it states that *"property exempted"* is "not liable" for any prepetition debts except those enumerated. Therefore, to claim protection under this section, the debtor must first be entitled to exempt his property under one of the other subsections of 522. As the Court has previously concluded, the Lanctots have no interest to exempt nor have they any claim to avoiding powers under any subsections of 522 so as to allow them an interest to exempt. As such is the case, they cannot claim any further rights of avoidance under this subsection.

Confusion, however, arises from the wording of Section 522(c)(2). It allows for the preservation of liens which are *not* voided or avoided under various sections of the Code on exempt property. As explained in the legislative history, this was added to insure that the discharge "will not prevent the enforcement of valid liens". H.R. Rep.No. 95–595, *supra* at 361, U.S.Code Cong. & Admin.News 1978, p. 6317; Sen. Rep.No. 95–989, *supra* at 76, U.S.Code Cong. & Admin.News 1978, p. 5862. It would be illogical to construe a separate avoiding power resulting from the negative implication of the language used in subsection 522(c)(2). What purpose would be served by allowing the trustee broader avoiding powers than the debtor and allowing those powers to be used for the benefit of the general creditors if, when those powers were used, the debtor could step in and claim an exemption? In fact, under 11 U.S.C. § 1551, liens avoided by the trustee under the sections mentioned in Section 522(c) are *automatically* preserved for the benefit of the estate. Legislative history makes it apparent that this section was meant to prevent other claimants to the property, in specific junior lienors, but equally applicable to the debtor, from "improving their position at the expense of the estate when a senior lien is avoided". H.R. Rep.No. 95–595, *supra* at 376, U.S.Code Cong. & Admin.News 1978, p. 6332; Sen. Rep.No. 95–989, *supra* at 91, U.S.Code Cong. & Admin.News 1978, p. 5877.

Adequate relief has already been given to the debtor under other provisions of Section 522 to be freed from involuntary and other coercive liens on his property. As stated in Colliers, the policy is continued under the new Code that "the debtor should not profit at the creditors' expense from the trustee's efforts in undoing the debtor's own acts." 3 Colliers on Bankruptcy § 522.08, at 522–32 (15th ed. 1979). Thus, only those exceptions to this general policy as carefully laid out in subsection (f), (g), and (h) of 522 are allowed to the debtor and not a general dismemberment of previous policy in subsection (c). Although section 522(g) gives the debtor some power to claim the benefit of the trustee's avoiding powers, in all cases the debtor is also given those avoiding powers himself. *See* 11 U.S.C. § 522(f) and 522(h). To construe subsection (c) providing a separate exemption power, then, would be inconsistent with the rest of Section 522 as well as with Section 551.

A review of the debtor's rights under Section 522 reveals no applicable avoiding power available to the Lanctots. Neither does the law allow the debtors to benefit from the trustee's broader avoiding powers in this situation. Accordingly,

IT IS ORDERED that the debtors' motion to stay this adversary proceeding be, and it is, denied.