UNITED STATES of America

v.

**Gus WOOD, Trustee and James Lewis Peavy.**

**In re James Lewis PEAVY.**

**Civ. A. No. C82–135N.
Bankruptcy Adv. No. 82–0044N.
Bankruptcy No. 81–00391N.**

United States District Court,
N.D. Georgia,
Newnan Division.

Feb. 24, 1983.

Douglas P. Roberto, Asst. U.S. Atty., Atlanta, Ga., for plaintiff.

S. Eugene Lambert, Jr., Gus L. Wood, Newnan, Ga., for defendant.

## ORDER

TIDWELL, District Judge.

Appellant Small Business Administration ("SBA") filed an adversary proceeding in the bankruptcy court seeking termination of the automatic stay imposed by 11 U.S.C. § 362 and for abandonment of property pursuant to 11 U.S.C. § 554(b). The proceeding concerned the rights to certain cash proceeds from the sale of residential real estate. After filing an answer, the trustee filed an Application to Compromise, which application was subsequently approved by the bankruptcy court. Both the SBA and the debtor James Lewis Peavy claimed an interest in the fund and filed cross-motions for summary judgment. The bankruptcy court granted summary judgment for the debtor and the SBA appeals.

On May 3, 1978, the SBA made a loan to Trainor Ag Aviation, Inc. in the principal amount of $62,500.00. Mr. Peavy agreed to secure payment of the loan with a personal guarantee and also gave the SBA a deed to secure debt on his residence. On September 27, 1980, Mr. Peavy sold his dwelling. In a letter dated October 7, 1980, the SBA consented to the release of its deed to secure debt on Mr. Peavy's residence contingent upon the proceeds of the sale being placed in an "escrow" account, available to the SBA on demand. The letter recited that it was the SBA's understanding that Mr. Peavy was to purchase another residence, at which time the SBA would receive a second mortgage on that residence. The release contained language that Mr. Peavy was not released from his obligation for payment of the note executed by Trainor Ag Aviation, Inc. and payable to the SBA. The proceeds of the sale of Mr. Peavy's house were placed in escrow. The loan to Trainor Ag Aviation, Inc. went into default for nonpayment; the principal balance outstanding is $62,000.00.

On October 29, 1981, Mr. Peavy filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code. He claimed an exemption in the escrow fund in the amount of $5,400.00. The SBA also claimed an interest in these funds superior to the debtor's claimed exemption and filed the instant adversarial proceeding seeking a termination of the automatic stay and abandonment of the property. Both the debtor and trustee answered the petition. The trustee filed and received approval of an Application to Compromise. The SBA then moved for summary judgment. The debtor filed a cross-motion for summary judgment contending that upon the approval of the application to compromise, the property reverted to the debtor and was subject to a claim of exemption under 11 U.S.C. § 522. Finding that the SBA did not have a perfected security interest in the proceeds from the sale of Mr. Peavy's residence, the bankruptcy court denied the SBA's motion and granted summary judgment for the debtor.

As stated above, the trustee claims no interest in the fund at issue. The SBA maintains on appeal that it acquired a security interest in the fund at issue at the time the SBA made the loan to Trainor Ag

Aviation, Inc. by virtue of a Small Business Administration (SBA) Guaranty ("Guaranty") executed by Mr. Peavy in favor of the SBA and this security interest is sufficient to defeat the debtor's claimed exemption in a contest between the SBA and the debtor, regardless of whether that interest was perfected. The court agrees.

To analyze the relative interests of the parties in the fund at issue, the court looks to the relevant state law. *Dale v. Pattison,* 234 U.S. 399, 34 S.Ct. 785, 58 L.Ed. 1370 (1914). At the time of the loan transaction and as inducement for the loan to Trainor Ag Aviation, Inc., the debtor executed both the Guaranty and a deed to secure debt on his personal residence. The Guaranty contains the following language:

> As security for the performance of this guaranty the Undersigned hereby mortgages, pledges, assigns, transfers and delivers to Lender certain collateral (if any), listed in the schedule on the reverse side hereof. The term "collateral" as used herein shall mean any funds, guaranties; agreements or other property or rights or interests of any nature whatsoever, *or the proceeds thereof,* which may have been, are, or hereafter may be, mortgaged, pledged, assigned, transferred or delivered directly or indirectly by or on behalf of the Debtor or the Undersigned or any other party to Lender or to the holder of the aforesaid note of the Debtor, or which may have been, are, or hereafter may be held by any party as trustee or otherwise, as security, whether immediate or underlying, for the performance of this guaranty or the payment of the Liabilities or any of them or any security therefor.

The "collateral" listed on the reverse side of the Guaranty was the debtor's residence. As part of the transaction the debtor gave the SBA a deed to secure debt which recited that the deed was given to secure payment of a promissory note executed by Trainor Ag Aviation, Inc. and payable to the SBA.

■ The execution of the Guaranty was effective to create a security interest in cash proceeds from the sale of Mr. Peavy's residence under Article 9 of the Uniform Commercial Code as adopted in Georgia. *Official Code of Ga.Ann.* §§ 11–9–101, *et seq.* (Michie 1982), *Ga.Code Ann.* §§ 109A–9–101 *et seq.* (Harrison 1979). (Language in the Guaranty was insufficient to create a security interest in the residence itself since transfers of interests in real property are expressly excluded from the operation of Article 9. *Official Code of Ga.Ann.* § 11–9–104(h) (Michie 1982), *Ga.Code Ann.* § 109A–9–104(h) (Harrison 1979).) Article 9 applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts." *Official Code of Ga.Ann.* § 11–9–102(1)(a) (Michie 1982), *Ga.Code Ann.* § 109A–9–102(1)(a) (Harrison 1979). Cash proceeds from the sale of the residence, not being real property, are personal property. *Official Code of Ga.Ann.* §§ 44–1–2 and 3 (Michie 1982), *Ga.Code Ann.* §§ 85–201 and 1701 (Harrison 1979). The fact that the Guaranty was executed prior to the existence of any cash proceeds is of no consequence since, under Article 9, obligations may be secured by "after-acquired collateral". *Official Code of Ga.Ann.* § 11–9–204 (Michie 1982), *Ga.Code Ann.* § 109A–9–204 (Harrison 1979). The Guaranty in question fulfills all the requirements for a proper security agreement; it is a writing, signed by the debtor setting forth the agreement creating a security interest in collateral described as the proceeds of certain residential real estate, a description of the real estate being set forth with sufficient particularity on the reverse side of the Guaranty. *In Re Carmichael Enterprises, Inc.,* 334 F.Supp. 94 (N.D.Ga.1971), *aff'd,* 460 F.2d 1405 (5th Cir.1972); *Official Code of Ga. Ann.* §§ 11–9–105(1), 110 and 203 (Michie 1982), *Ga.Code Ann.* §§ 109A–9–105(1), 110 and 203 (Harrison 1979).

■ The security interest attached to the proceeds and became enforceable as between the SBA and Mr. Peavy upon the sale of the real estate, that being the time when Mr. Peavy first acquired "rights" in

the funds at issue. *Official Code of Ga. Ann.* § 11–9–203(1) (Michie 1982), *Ga.Code Ann.* § 109A–9–203(1) (Harrison 1979). The SBA's release of the deed to secure debt contingent upon the funds being placed in an escrow account did not release Mr. Peavy's obligation under the terms of the Guaranty or the SBA's security interest acquired therein. Thus, at the commencement of the Chapter 7 proceedings, the SBA held an enforceable security interest in the escrow fund at issue. There is some question as to whether that interest was perfected, however, the issue of perfection is immaterial in the instant case due to the voluntary nature of the transfer creating the security interest in the escrow fund.

By virtue of its security interest in the proceeds from the sale of the residence, the SBA had a "lien" on the Funds at issue as of the commencement of the instant bankruptcy proceeding as that term is defined in 11 U.S.C. § 101(28), (36) and (37). *See* Senate Comm. on the Judiciary, Bankruptcy Reform Act of 1978, S.Rep. No. 95–989, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Ad.News 5787, 5811–5812. The debtor claimed an exemption in the funds at issue pursuant to 11 U.S.C. § 522 and *Official Code of Ga.Ann.* § 44–13–100 (Michie 1982), *Ga.Code Ann.* § 51–1301.1 (Harrison Supp.1981). Under § 522, the debtor may exempt certain property even if the property is subject to a lien; however, property claimed as exempt remains subject to an otherwise unavoided lien. 11 U.S.C. § 522(c).

■ The SBA's lien extends to the total amount of the fund at issue. Assuming that the SBA lien was unperfected at the time of the commencement of the instant bankruptcy proceeding, that lien was subject to avoidance by the trustee under 11 U.S.C. § 544(a); however, the trustee's avoidance powers were not exercised to defeat the SBA's claim to the instant fund as the trustee settled his claim to these funds in May, 1982. In addition to the avoidance powers of the trustee, the debtor has certain avoidance powers under § 522 which could, in the proper case, defeat a lien on

property to the extent that the lien impairs an exemption. 11 U.S.C. § 522(f)–(h). These avoidance powers are not available to Mr. Peavy. Subsection (f) applies only to judicial liens and nonpossessory, nonpurchase-money security interests in certain household and personal goods. Subsection (g) applies only to property recovered by the trustee under the trustee's avoiding powers. Subsection (h) does permit the debtor to assume the avoidance powers available to the trustee under § 544 where the trustee has not avoided the lien, but subsection (h) gives avoidance powers to the debtor only if the transfer creating the lien was involuntary. *In Re Saberman,* 3 B.R. 316 (Bkrtcy.N.D.Ill.1980). The security agreement of the debtor embodied in the Guaranty which created the SBA lien on the cash proceeds from the sale of the Peavy residence was a voluntary transfer. *In Re Dipalma,* 24 B.R. 385 (Bkrtcy.D.Mass. 1982). As the debtor is unable to avoid the SBA's lien extending to the whole of the fund in issue, he may not properly claim a $5,400.00 exemption in the proceeds under 11 U.S.C. § 522.

In accordance with the foregoing, the order of the bankruptcy court is reversed and the case is remanded to that court with directions to grant the SBA's motion for summary judgment and deny the motion of the debtor.