**In re Lomas Harold NOLEN, Barbara Jean Nolen, Debtors.**

**Kermit TANTON, Trustee in Bankruptcy of Lomas Harold Nolen and Barbara Jean Nolen, Plaintiff,**

v.

**J.R. NOLEN, Defendant.**

**Adv. No. 83–0350.**

United States Bankruptcy Court, M.D. Alabama.

March 6, 1984.

Barry Bledsoe, Dothan, Ala., for plaintiff.

C.H. Espy, Jr., Dothan, Ala., for defendant.

## OPINION ON RESERVED QUESTION OF HOMESTEAD EXEMPTION

RODNEY R. STEELE, Bankruptcy Judge.

On February 14, 1984, this court approved a compromise and settlement of the complaint filed by trustee under Title 11, United States Code, Section 548. The compromise and settlement provided for the trustee and the defendant to offer the property involved in this case for sale through April 30 of 1985. The stipulation recognized the rights of trustee and of J.R. Nolen in the real property involved and its proceeds.

The debtors, however, claimed a right of homestead exemption in a certain parcel of real property, or its proceeds, under Title 11, United States Code, Section 522(g), (h) and (i).

The parties, including plaintiff, defendant and the debtors, agreed to submit the question of homestead rights of the debtors on and after March 2, 1984, and upon a stipulation of facts, included in the joint stipulation approved on February 14, 1984.

The parties have now briefed the question of law involved in the homestead exemption claim, and the court recites the following findings and conclusions.

## FINDINGS

The parties have stipulated that we are to assume, for the purposes of this question of law, that the trustee would have been entitled to avoid the transfer which he asserts in his complaint, from the debtors to J.R. Nolen, which transfer occurred by deed on July 17, 1982. The trustee asserted in his complaint that this transfer was avoidable by him as a fraudulent conveyance under Title 11, United States Code, Section 548.

The parties also agree that the debtors meet the requirements of the Code of Alabama, 1975, Section 6-10-2, which would entitle them to claim a homestead exemption in this property, up to the amount of $5,000 per person.

It is further agreed that there was no concealment of the transfer in question.

The sole question remaining under Title 11, United States Code, Section 522(g), (h) and (i) is whether the transfer was voluntary. If it was a voluntary transfer, then the debtors would not be entitled to claim their homestead exemption rights as against the trustee in these proceedings.

The parties further stipulated as follows:

1. On or about May 12, 1969, J.R. Nolen and wife, Lessie Nolen, (the parents of debtor, Harold Nolen) deeded 33.3 acres of land to the debtors. The debtors paid no consideration for this land, and it is on this parcel that they built their residence during the early 1970s. On March 4, 1974, the debtors mortgaged this property to First Federal Savings and Loan Association of Andalusia.

2. On or about June 16, 1976, J.R. Nolen and his wife, Lessie Nolen, sold 80 acres of land to the debtors.

3. The 80 acres referred to in the preceding paragraph was purchased with money obtained from the First Federal Savings and Loan Association of Andalusia. See the mortgage of June 16, 1976, to First Federal from the debtors.

4. In the early part of 1982, the debtors were undergoing financial difficulties and

got behind on the payment of their debt to the First Federal Savings and Loan Association of Andalusia, as evidenced by the mortgage referenced by the preceding paragraph. Efforts were made by the debtors to bring this debt up to date, but the First Federal Savings and Loan Association of Andalusia refused to accept any payments and turned the matter over to their attorneys.

5. On July 7, 1982, the First Federal Savings and Loan Association of Andalusia began foreclosure proceedings against the debtors. On the same day, J.R. Nolen paid off the mortgage, including attorneys' fees in the amount of $50,090.94. Upon paying off the mortgage, J.R. Nolen inquired as to how he could have the property in his name. The Savings and Loan suggested that the debtors would have to deed the property to him for him to obtain title. On July 17, 1982, Harold Nolen and wife, Barbara Jean Nolen, executed a deed to the land and house which is the subject matter of the current adversary proceeding, to J.R. Nolen.

6. Subsequently, on July 19, 1982, the First Federal Savings and Loan Association of Andalusia assigned their paid mortgage to J.R. Nolen.

7. The debtors have resided with their children in a residence on the real property that is the subject matter of this adversary proceeding since the early 1970s and continue to reside in said residence.

## CONCLUSIONS

The question presented in this case is whether, assuming the transfer of real property from the debtors to J.R. Nolen was due to be set aside as a fraudulent conveyance under Section 548(a)(2) of Title 11, United States Code, the debtors are entitled to a $10,000 homestead exemption. It is the trustee's position that the debtors are not entitled to a homestead exemption because they voluntarily conveyed their homestead property to J.R. Nolen more than nine months before filing their Chapter 7 petition. It is the debtors' position that the transfer was involuntary and that

they are thus entitled to claim the exemptions under Title 11, United States Code, Section 522(g).

That provision of the Bankruptcy Code provides:

(g) Notwithstanding Sections 550 and 551 of this Title, the debtor may exempt under Subsection (b) of this Section property that the trustee recovers under Section 510(c)(2), 542, 543, 550, 551, or 553 of this Title to the extent that the debtor could have exempted such property under Subsection (b) of this section if such property had not been transferred, if—

(1)(A) Such transfer was not a voluntary transfer of such property by the debtor; and (B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under Subsection (f)(2) of this section.

It is admitted for purposes of this submission that all of the elements of Subsection (g) are met except the question of whether the transfer was a voluntary one.

The definition of "voluntary transfer" as used in this subsection is not defined in the Bankruptcy Code.

The genesis of the right of the debtors to claim exemptions out of property recovered by the trustee under his avoiding powers is in Section 6 of the old Bankruptcy Act, and the holding in *Chicago B & Q Railroad v. Hall*, 229 U.S. 511, 33 S.Ct. 885, 57 L.Ed. 1306 (1913). In the Model Bankruptcy Act proposed as part of the Report of the Commission on the Bankruptcy Laws of the United States in July of 1973, Section 4–503(h), the drafters provided that "no property recovered under the provisions of this Act shall be allowed as exempt if the property recovered was concealed or voluntarily transferred by the debtor . . . ." The Commission Note referred to "judicial process" as an example of an involuntary transfer. The Congressional Committee Notes to the present Code also reinforce this interpretation, recognizing exemption rights in recovered property, "if the property was involuntarily transferred away from the debtor

(such as by the fixing of a judicial lien) ...."

And the weight of authority in cases decided since the enactment of the Bankruptcy Code of 1978 follows this reasoning. Thus voluntary is given its ordinary meaning, that is, that it was intentionally transferred away by the debtor.

So in *In re Tackett*, (Bkrtcy.N.M.1982) 21 B.R. 107, the court reviews reported cases,[1] and decided that the plaintiff/debtor there reached her own conclusion as to the secured status of the promissory note and acted upon that conclusion without any coercion and that the transfer was voluntary.

In *In re Dipalma*, (Bkrtcy.Mass.1982), 24 B.R. 385, the court concluded that the voluntary grant of a security interest as opposed to a lien created by operation of law or the fixing of a judicial lien is clearly a voluntary transfer. The court there referred to the House and Senate Reports on the Bankruptcy Code, reprinted in 1978.

See also *U.S. v. Wood*, (U.S.D.C.N.D.Ga., 1983) 28 B.R. 383. And see the holding in *In re Bloom*, (Bkrtcy.Or.1983) 28 B.R. 571, in which the debtors argue that the granting of the security interest to the defendant was not a voluntary transfer because they would not have granted the security interest to the defendant, but for the defendant's threat to have the pick up truck and the other property sold on execution to satisfy defendant's judgments and that by reason of this threat, they were coerced into granting the security interest.

The court in that latter case held that a threat to take action to collect a debt or a judgment by legal means does not constitute such coercion as to transform the voluntary grant of a security interest into an involuntary transfer of property. It held that an agreement to forestall collection of a judgment is adequate consideration to support a contract to grant a security interest in property, and held that in that case there was a voluntary transfer and that the

debtors were not entitled to their exemption rights.

We think this latter case (*In re Bloom*) adequately disposes of the argument made by debtors under *In re Reaves*, (Bkrtcy.S. D.1981) 8 B.R. 177. In that case, the Bankruptcy Judge redefined voluntary transfer to mean a transfer in which the transferor was in possession of all of the important facts surrounding the transaction, and made the transfer without coercion or harassment. The thrust of that decision is that a transfer is not voluntary where the transferor was imposed upon by the transferee creditor after severe pressure and without fully divulging all of the facts to the transferor. The definition there thus becomes a definition which includes the elements of "knowing" and "freely made."

We cannot, in this case, conclude that the debtor did not know all of the facts surrounding this transfer. He knew what the circumstances were, and that he was about to lose not only his home, but the 80 acres which was apparently the family farm. He knew that if he did not take some step, he would undoubtedly lose that property to the mortgage holder.

And we think he made the transfer of his own free will, not to the creditor, that is, First Federal Savings and Loan of Andalusia, but to his father, a family member, who provided the money for the redemption of the property, and whose rights are recognized by the stipulation and settlement in this case.

The debtor makes an ingenious argument, following *In re Reaves*, that the satisfaction of the mortgage by J.R. Nolen and the transfer of the property to him by these debtors, was *in lieu of the foreclosure* which the mortgage holder had commenced. But we think the reasoning in *In re Bloom*, referred to above, is an adequate answer to that argument.

The conclusion finally is that this was not an involuntary transfer, but was one

---

1. *Styler v. Local Loan Financial Services,* 6 B.R. 576, *Reaves v. Sunset Branch National Bank of* *South Dakota,* 8 B.R. 177.

made by the debtors with full knowledge of the facts, and of their own free will.

The result is that debtors will not be authorized to claim an exemption in the 33 acres upon which their residence is located, nor in the proceeds from the sale of that property.

An appropriate order will enter.