**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                         )     BAP No.   EC-16-1087-KuMaJu
                                               )
ADVANCED MEDICAL SPA INC.,                     )     Bk. No.   15-27456
                                               )
                        Debtor.                )
_____)
                                               )
MAUREEN YVONNE LAPIERRE,                       )
                                               )
                        Appellant,             )
                                               )
v.                                             )     **MEMORANDUM**[*]
                                               )
ADVANCED MEDICAL SPA INC.;                     )
ERIC J. NIMS, Chapter 7 Trustee,)
                                               )
                        Appellees.             )
_____)

Argued and Submitted on October 20, 2016
at Sacramento, California

Filed – November 28, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Christopher D. Jaime, Bankruptcy Judge, Presiding

Appearances:     Appellant Maureen Yvonne Lapierre argued pro se;
                 J. Luke Hendrix argued for Appellee Eric J. Nims,
                 Chapter 7 Trustee.

Before: KURTZ, MARTIN[**] and JURY, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]Hon. Brenda K. Martin, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

## INTRODUCTION

Maureen Yvonne Lapierre appeals from an order denying her motion for relief from the automatic stay. Lapierre sought to proceed with her pending arbitration proceeding against chapter 7[1] debtor Advanced Medical Spa Inc. and to collect any resulting arbitration award to the extent liability insurance proceeds were available to pay the award.

The bankruptcy court denied Lapierre's stay relief motion because, according to the court, continuation of Lapierre's efforts to obtain an arbitration award and to collect that award from available insurance proceeds would interfere with the orderly administration of Advanced Medical Spa's bankruptcy estate. In so holding, however, the bankruptcy court applied an incorrect standard of proof. The bankruptcy court, in balancing the relative harms to the parties, stated that Lapierre had not met her burden of proof to establish cause for relief from stay. The bankruptcy court's statement demonstrates that it did not apply the correct standard of proof to Lapierre's relief from stay motion, as mandated by § 362(g).

Accordingly, we VACATE and REMAND so that the bankruptcy court can apply the correct standard of proof.

## FACTS

Lapierre, a former client of Advanced Medical Spa, filed a state court action against the medical clinic and its president

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

and primary physician Efrain Gonzalez in 2012 stating causes of action for medical malpractice and medical battery.[2] Lapierre alleged that Gonzalez was supposed to perform a laser vaginal rejuvenation procedure and a labiaplasty. Lapierre further alleged that Gonzalez performed different surgical procedures than those to which she had consented and that he botched the procedures. As a result of the botched procedures, Lapierre claimed, Gonzalez burned, mutilated and disfigured her causing her a great deal of physical and mental pain and suffering, which is ongoing.

Advanced Medical Spa filed its chapter 7 bankruptcy petition in September 2015. At the time of its bankruptcy filing, Lapierre's prepetition action had been set for mandatory binding arbitration in November 2015, but the automatic stay prevented the arbitration from occurring as scheduled.[3]

In January 2016, Lapierre filed, pro se, the stay relief

_____

[2]The parties have not provided us with complete excerpts of record. But we can and will take judicial notice of the parties' bankruptcy filings, as reflected in the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

[3]Lapierre filed a prior motion for relief from stay in October 2015, but that relief from stay motion was denied without prejudice in November 2015. We do not know the specific reasons for the denial of this first relief from stay motion because none of the parties to this appeal obtained the transcript from the November 10, 2015 relief from stay hearing, at which the bankruptcy court stated its findings of facts and conclusions of law orally on the record. According to Lapierre's opening brief, that motion was denied because her counsel at the time committed "procedural errors". In any event, it is clear from the record that the parties and the bankruptcy court relied on evidence from the first relief from stay motion in considering the second relief from stay motion. We will do the same.

3

motion from which this appeal arose. By way of the motion, Lapierre sought to have the automatic stay modified in order to permit her to prosecute her arbitration proceeding to conclusion and to enforce any resulting arbitration award only against any available liability insurance proceeds.

Both the debtor and the chapter 7 trustee opposed Lapierre's stay relief motion. The bankruptcy court held a hearing on the stay relief motion in February 2016 and permitted the parties to file supplemental briefs. Initially, the court set a continued hearing on Lapierre's stay relief motion; however, after receiving the parties' supplemental briefs, the bankruptcy court vacated the continued hearing date and took the matter under submission without further hearing.

In March 2016, the bankruptcy court issued its written decision holding that granting Lapierre's request for relief from the stay would interfere with the orderly and proper administration of Advanced Medical Spa's chapter 7 estate.

According to the bankruptcy court, Advanced Medical Spa's bankruptcy schedules indicated that the medical clinic had at least 35 prepetition creditors – most of them medical malpractice claimants. Some of those medical malpractice claims were covered by a CNA Insurance Companies policy, some by a Lancet Indemnity Insurance policy and some by no insurance.

The bankruptcy court noted that Lapierre's claim fell under the CNA policy, which had a per claim limit of $1 million and an aggregate limit of $3 million per policy period. The policy period applicable to Lapierre's claim was December 31, 2011 to December 31, 2012. The bankruptcy court further noted that the

4

CNA policy was a "wasting policy," meaning that the costs of litigating claims made under the policy depleted the proceeds available to pay those claims. According to the bankruptcy court, in addition to Lapierre's case, there were five other pending medical malpractice cases in which the claimants were asserting claims against the CNA policy. The bankruptcy court explained that the total aggregate amount sought by all of the CNA claimants was unknown but that it likely would equal or exceed the $3 million aggregate limit – without even taking into account potential litigation costs.

The bankruptcy court weighed Lapierre's claims of grievous injury and her asserted need to expeditiously conclude her prepetition arbitration against the potential prejudice the estate would suffer if the court lifted the stay. The court concluded that the potential prejudice to the estate outweighed Lapierre's alleged injuries and need. As the court explained, if it were to allow Lapierre to proceed with her arbitration, the limited insurance resources available to compensate the CNA claimants would be diminished by the costs of litigation incurred in Lapierre's arbitration proceeding and effectively would permit Lapierre to obtain preferential treatment for her claim to the detriment of the five other CNA claimants. As the court further explained, allowing Lapierre to proceed could prejudice all of Advanced Medical Spa's creditors to the extent the CNA policy proceeds were exhausted without fully compensating the CNA claimants.

The court also expressed a great deal of concern that the continuation of Lapierre's arbitration proceeding could start "a

5

race to the courthouse" and could "open the litigation floodgates" which in turn would deplete the insurance proceeds and/or cause the estate to incur significant administrative expenses that otherwise possibly could be avoided.

Citing Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.), 311 B.R. 551, 559-60 (Bankr. C.D. Cal. 2004), the bankruptcy court stated that Lapierre had the initial burden to establish a prima facie case of cause for relief from the automatic stay and that Lapierre had not met this burden. As the bankruptcy court put it:

> Ms. LaPierre has not met her burden of establishing cause. Ms. LaPierre has not met her burden because the court is not persuaded that the potential hardship to Ms. LaPierre outweighs the potential for prejudice to the debtor, the estate, and all other unsecured creditors, particularly those similarly-situated to Ms. LaPierre, if the motion is granted.

Order Denying Stay Relief (March 30, 2016) at 4-5.

On March 30, 2016, the bankruptcy court entered its order denying Lapierre's stay relief motion, and Lapierre timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). An order denying relief from the automatic stay is a final and appealable order, so we have jurisdiction under 28 U.S.C. § 158. See Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.), 96 F.3d 346, 351 (9th Cir. 1996).

## ISSUE

Did the bankruptcy court abuse its discretion when it denied Lapierre's relief from stay motion?

6

**STANDARDS OF REVIEW**

We review the bankruptcy court's denial of relief from the automatic stay for an abuse of discretion. Id.

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or if its factual findings are illogical, implausible or not supported by the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

Under § 362, the automatic stay arises upon the filing of the debtor's bankruptcy petition. Among other things, the stay prohibits creditors from continuing to prosecute prepetition litigation against the debtor. § 362(a)(1); see also In re Conejo Enterprises, Inc., 96 F.3d at 351. This aspect of the automatic stay protects both the debtor **and** the debtor's creditors. Id. Without the stay:

> certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

Id. at 352 (quoting H.R. Rep. No. 95-595, at 340, as reprinted in 1978 U.S.C.C.A.N. 5787, 6297.9).

A creditor seeking to proceed postpetition with litigation against the debtor typically must request and obtain relief from the automatic stay. Id. Such relief is granted only upon a showing of cause. § 362(d)(1); In re Conejo Enterprises, Inc., 96 F.3d at 351. However, the Bankruptcy Code does not specify what constitutes cause in this context, so bankruptcy courts must

7

determine whether cause exists on a case-by-case basis. Id.; Kronemyer v. Am. Contractors Indemn. Co. (In re Kronemyer), 405 B.R. 915, 921 (9th Cir. BAP 2009).

In In re Kronemyer, this Panel upheld the bankruptcy court's consideration of the factors articulated in In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), for the purpose of determining whether cause existed to lift the stay to permit the creditor to proceed with prepetition litigation against the debtor. In re Kronemyer, 405 B.R. at 921. As the Kronemyer court stated, "We agree that the Curtis factors are appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum." Id.

The Curtis factors consist of the following twelve nonexclusive factors:

1. Whether the relief will result in a partial or complete resolution of the issues;

2. The lack of any connection with or interference with the bankruptcy case;

3. Whether the foreign proceeding involves the debtor as a fiduciary;

4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

12. The impact of the stay on the parties and the "balance of hurt,"

In re Plumberex Specialty Prods., Inc., 311 B.R. at 559-60 (quoting In re Curtis, 40 B.R. at 799-800).

In weighing the relevant factors, the bankruptcy court is not required to give equal weight to all factors. In fact, the balancing of potential harm to the creditor on the one hand and to the debtor and the bankruptcy estate on the other hand frequently is dispositive. Compare Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.), 2008 WL 8444797, at *6 (Mem. Dec.) (9th Cir. BAP Aug. 15, 2008) ("the bankruptcy court must balance the potential hardship that will be incurred by the party seeking relief if the stay is not lifted against the potential prejudice to the debtor and the bankruptcy estate") with In re Curtis, 40 B.R. at 806 ("The most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit.").

In this appeal, the most critical issue we must address is

9

the bankruptcy court's comments on the burden of proof. While neither the Ninth Circuit Court of Appeals nor this Panel have issued a published decision addressing the standard of proof for establishing cause for stay relief under § 362(d)(1), the bankruptcy courts within the circuit that have squarely addressed the issue are trending in a single direction. That trend is well-represented by the following quote from Plumberex:

> The burden of proof on a motion to modify the automatic stay is a shifting one. To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that "cause" exists for relief under § 362(d)(1). Once a prima facie case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted. If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied.

Id. at 557 (citations and footnotes omitted). Accord, Wang v. Votteler (In re Wang), 2010 WL 6259970 at *6 (Mem. Dec.) (9th Cir. BAP Sept. 23, 2010); In re Am. Spectrum Realty, Inc., 540 B.R. 730, 737 (Bankr. C.D. Cal. 2015); In re Smith, 389 B.R. 902, 918 (Bankr. D. Nev. 2008).[4]

Even though there seems to be a consensus regarding the above-referenced standard of proof, there is no consensus on what constitutes a prima facie case of cause for relief. This is hardly surprising. Because cause for relief from the stay must be decided on a case-by-case basis, In re Conejo Enterprises,

---

[4]This trend is consistent with § 362(g), which places the burden of proof on the debtor on all issues except for the issue of debtor's equity in property (when relevant). As one leading treatise explains, § 362(g) deals with the ultimate burden of persuasion, whereas the rule requiring the party seeking relief from stay to present a prima facie case of cause deals only with the initial burden of production. See 3 Collier on Bankruptcy ¶ 362.10 (16th ed. 2016).

Inc., 96 F.3d at 351, it is impossible to define for all relief from stay motions what will constitute a prima facie case of cause. Therefore, bankruptcy courts ordinarily must rely upon generic statements regarding what constitutes a prima facie case – or prima facie evidence – like the following: "A party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." Black's Law Dictionary (10th ed. 2014); see also In re Planned Sys., Inc., 78 B.R. 852, 860 n.7 (Bankr. S.D. Ohio 1987) ("'prima facie evidence' is such evidence, in judgment of law, as is sufficient to establish the fact; and, if not rebutted, remains sufficient for that purpose.").

Here, we disagree with the bankruptcy court's statement that Lapierre had not established a prima facie case of cause for relief from the automatic stay. The undisputed facts presented to the bankruptcy court established that Lapierre was a prepetition medical malpractice claimant who had pending at the time the bankruptcy petition was filed an arbitration proceeding against the debtor and Gonzalez that already was scheduled for hearing.

On the issue of Lapierre's harm, Lapierre had presented some evidence indicating that she was experiencing ongoing pain and suffering and that she hoped to undergo corrective surgical procedures to remedy her pain and suffering if she could obtain an arbitration award sufficient to pay for the corrective surgical procedures. The bankruptcy court's decision indicates that, for purposes of the relief from stay motion, it accepted as

11

true Lapierre's statements on the harm she was suffering.[5]

On the issue of harm to Advanced Medical Spa's bankruptcy estate, Lapierre represented in her motion that she only sought relief from stay for the purpose of collecting whatever insurance proceeds were available to pay any arbitration award she was able to obtain, which necessarily would limit the potential impact on Advanced Medical Spa's estate.

Under the specific circumstances of this case, we hold that the above-referenced facts constituted a prima facie case of cause for relief from the automatic stay. Our holding is consistent with the legislative comments Congress made at the time the Bankruptcy Code was enacted. As Congress expressed, "a

---

[5]We acknowledge that the evidence Lapierre presented on this point potentially was subject to legitimate objection. For instance, we could not find in the relief from stay record any **declaration testimony** by Lapierre in which she simply stated that she was experiencing ongoing pain and suffering as a result of the procedures Gonzalez conducted on her and that she hoped to undergo corrective procedures if she could obtain sufficient funds to pay for the procedures by way of an arbitration award against the debtor and/or Gonzalez. Instead, she relied on a declaration in which she only stated that her exhibits were true and correct copies. In turn, her unauthenticated exhibits frequently contained multiple layers of hearsay and also contained many, many alleged facts that were irrelevant to the key points Lapierre needed to prove to establish her prima facie case of cause for relief from the automatic stay.

Because the parties opposing Lapierre's relief from stay motion – and the bankruptcy court – seemed to accept as true Lapierre's statements of harm for purposes of resolving the relief from stay motion, we decline to resolve this appeal on the basis of any evidentiary defects in Lapierre's presentation of evidence in support of her prima facie case. That being said, Lapierre must understand that, on remand, she as a pro se litigant can be held to the same evidentiary standards that represented parties are held to.

desire to permit an action to proceed to completion in another tribunal may provide . . . cause" for stay relief, and "it will often be more appropriate to permit proceedings to continue in their place of origin, **when no great prejudice to the bankruptcy estate would result**, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."  H.R. Rep. 95-595, 341, as reprinted in 1978 U.S.C.C.A.N. 5963, 6297 (emphasis added).[6]

In light of our holding that Lapierre established a prima facie case of cause for relief from the automatic stay, the bankruptcy court should have shifted the burden to Advanced Medical Spa and to the bankruptcy trustee to establish that the stay should remain in place.  As a result, when the bankruptcy court balanced the respective harms of the parties, the bankruptcy court incorrectly stated that Lapierre had "not met **her burden** because the court is not persuaded that the potential hardship to Ms. LaPierre outweighs the potential for prejudice to the debtor, the estate, and all other unsecured creditors . . . ."  (Emphasis added.)  Given that Lapierre met her burden of production, the ultimate burden of persuasion was on the debtor and the trustee to demonstrate that Advanced Medical Spa's harm outweighed Lapierre's harm.  § 362(g); 3 Collier on Bankruptcy, supra, at ¶ 362.10.

---

[6]Furthermore, we disagree with the notion that Lapierre needed to establish irreparable harm.  But see In re Curtis, 40 B.R. at 801-03.  Under the circumstances of this case, it was sufficient for Lapierre's prima facie case to include evidence tending to show that she was experiencing ongoing pain and suffering, which she might be able to remedy if she were permitted to proceed with the arbitration to its conclusion.

13

We are not persuaded that this error regarding the standard of proof was harmless. If the bankruptcy court – in balancing the parties' respective harms – had correctly assigned the ultimate burden of persuasion to the parties opposing Lapierre's stay relief motion, it might have balanced those harms in favor of Lapierre. The facts presented to the bankruptcy court at the time it ruled on Lapierre's relief from stay motion indicated a close call on the issue of balancing the harms. On the one hand, the court was faced with Lapierre's claims of ongoing pain and suffering which she hoped to ameliorate through corrective surgery funded by way of an arbitration award to be paid from the CNA policy. On the other hand, the bankruptcy court was faced with an estate with thirty-plus medical malpractice claims – six of which (the court was told) were claims against the CNA insurance policy. The bankruptcy court further was told that the six claims against the CNA policy might exceed the policy limits and that allowing Lapierre to proceed might cause a creditor "race to the courthouse" and also might diminish estate funds available to pay claims of creditors not making claims against the CNA policy.

On these facts, the balancing of the harms reasonably could have been determined in favor of either side, particularly if the court had properly assigned the ultimate burden of persuasion to the parties opposing the relief from stay motion. Consequently, we must VACATE the the bankruptcy court's order denying relief from stay and must REMAND so that the bankruptcy court can apply the correct standard of proof.

Other facts have come to light during the course of this

14

appeal – not presented to the bankruptcy court at the time it ruled on the relief from stay motion – which tend to undermine the contention of potential harm to the bankruptcy estate if Lapierre were to proceed with the prosecution of her arbitration proceeding. Foremost among them, the bankruptcy trustee admitted during oral argument before this panel that the bankruptcy estate is administratively insolvent and that it has few if any assets to administer. In light of this fact, we cannot conceive how Lapierre's completion of her arbitration proceeding and her collection of any resulting arbitration award from the CNA policy proceeds could have any impact on Advanced Medical Spa's bankruptcy estate or on the estate's general unsecured creditors. Put bluntly, it is impossible to diminish an estate with no assets.[7]

In addition, numerous proofs of claim were filed in the bankruptcy court on March 16 and 17, 2016, on behalf of roughly 40 medical malpractice claimants. Among other things, the information contained in some of these proofs of claims arguably

---

[7]It was undisputed in the underlying relief from stay proceeding that the CNA policy proceeds were **not** estate property and were not available to satisfy the claims of Advanced Medical Spa's creditors – except for those entitled to make claims directly against the CNA policy. Therefore, it is unnecessary for us to consider whether or when liability insurance policy proceeds might qualify as property of a debtor's bankruptcy estate. For a thorough discussion of the issue, see In re Endoscopy Ctr. of S. Nevada, LLC, 451 B.R. 527, 541–47 (Bankr. D. Nev. 2011); but see also 3 Collier on Bankruptcy ¶ 362.07[3][a] (16th ed. 2016) ("the better approach is to consider the policy proceeds to be property of the estate, at least for purposes of requiring relief from the stay in order to recover from the insurer on the policy.")

calls into question the number and amount of the claims made against the CNA policy that are within the same policy period as Lapierre. While the number and amount of CNA policy claims as represented by Gonzalez in his declaration (and as adopted by the bankruptcy court) are not immediately reconcilable on their face with the claim amounts and claim dates set forth in the proofs of claim, this does not necessarily mean that they cannot be reconciled at all. For instance, the claim amounts might differ because the proofs of claim might only take into account the creditors' claims against Advanced Medical Spa, and not claims against Gonzalez, even though claims against both parties presumably would be covered by the CNA policy. Similarly, the date of the malpractice creditors' state court complaints might or might not reflect the date of their claims for purposes of determining whether the claims are covered by a particular CNA insurance policy coverage period.

To be clear, we are not saying that any of the above facts that have come to light while this matter has been on appeal should have been accounted for by the bankruptcy court before it ruled on Lapierre's relief from stay motion. There is nothing in the record to indicate that these facts were presented to the bankruptcy court for consideration in conjunction with Lapierre's relief from stay motion, and we generally do not consider documents and evidence not presented to the bankruptcy court for consideration. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001); Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077-78 (9th Cir. 1988). Even so, we are saying that, on remand, the bankruptcy court might need to address one

16

or more of these facts because they appear quite pertinent to determining whether (and to what extent) Advanced Medical Spa's estate might be harmed by continued prosecution of Lapierre's arbitration proceeding.

## CONCLUSION

For the reasons set forth above, we VACATE the bankruptcy court's denial of Lapierre's relief from stay motion, and we REMAND for further proceedings.

17