**In re Mary Jane REAVES, Debtor.**

**Mary Jane REAVES, Debtor-Plaintiff, for and on behalf of herself and on behalf of Rick A. Yarnall, Trustee, Plaintiff,**

v.

**SUNSET BRANCH, NATIONAL BANK OF SOUTH DAKOTA, a South Dakota Banking Corporation, Defendant.**

**Bankruptcy No. 480–00193.**
**Adv. No. 480–0095.**

United States Bankruptcy Court,
D. South Dakota.

Jan. 12, 1981.

J. Bruce Blake, Sioux Falls, S. D., for Reaves.

Steven W. Sanford, Cadwell, Brende & Sanford, Sioux Falls, S. D., for defendant.

PEDER K. ECKER, Bankruptcy Judge.

Mary Jane Reaves, a Chapter 7 Debtor, filed a Complaint to avoid a real estate mortgage under the provisions of 11 U.S.C. Section 547 and 11 U.S.C. Section 548. Debtor alleged that an 11 U.S.C. Section 547 preference occurred when on April 17, 1980, Debtor executed and delivered to the National Bank of South Dakota, Sunset Branch, Defendant, a real estate mortgage on Debtor's claimed homestead property on account of an antecedent debt. Debtor further alleged that an 11 U.S.C. Section 548 fraudulent transfer occurred on April 17, 1980, when Debtor executed and delivered to Defendant a real estate mortgage on Debtor's homestead property in exchange for less than a reasonably equivalent value at a time when Debtor was insolvent or became insolvent as a result of the transfer. Debtor requested the Court to avoid the real estate mortgage.

Defendant's Answer admitted Debtor owned and claimed the property as her homestead. Defendant admitted Debtor executed the mortgage on her homestead property on April 17, 1980, which Defendant recorded on April 22, 1980. Defendant alleged two affirmative defenses: (1) that 11 U.S.C. Section 547 and Section 548 do not apply where the debtor claims the property as exempt and (2) that Debtor is a transferee for value in good faith and the mortgage should remain in effect to the extent of value given.

The Court held a hearing and took the matter under advisement. Based on the pleadings and the evidence presented at the hearing, the Court makes the following findings of fact and conclusions of law.

## FACTS

Debtor filed her Chapter 7 Petition on June 27, 1980. Debtor, 40 years old, has a high school education and half a year of college. She is presently separated from her husband, Kenneth Reaves, and is living with her two children in the marital house located at 2500 Carter Place, Sioux Falls, South Dakota. Debtor is the sole owner of the property located at 2500 Carter Place and has claimed the property as exempt under the South Dakota homestead exemption of $30,000.00. Debtor last received support from her husband in April of 1980.

Debtor's husband, Kenneth Reaves, is President and, to the best of Debtor's knowledge, sole stockholder of 4400 Group, Ltd., which formerly owned and operated the business known as Apple Annie's, a restaurant. He managed Apple Annie's. In early January of 1980 he was hospitalized for heart problems. After his release from the hospital he executed a power of attorney and has since disappeared. Currently, 4400 Group, Ltd., is in a liquidation bankruptcy.

Debtor has never been an officer, director, or stockholder of 4400 Group, Ltd. She has never worked for the corporation or its Apple Annie's restaurant business. She has never handled the books or received any wages from the corporation or Apple Annie's. She is not authorized to write corporate checks.

First Services Mortgage Corporation assigned to South Dakota Housing Development Authority a first mortgage on Debtor's homestead property in the amount of $49,500.00.

Defendant has a second mortgage on Debtor's homestead property for the amount of $32,000.00.

Defendant received a third mortgage on April 17, 1980, on Debtor's homestead property for the amount of $20,000.00. Debtor seeks to avoid the third mortgage as a preferential transfer.

Mr. Williamson, an employee of Defendant, contacted Debtor in early January of 1980 about a third mortgage on her homestead property. Mr. Williamson told Debtor the third mortgage was needed to help Apple Annie's and to cure $17,000.00 in Apple Annie's overdrafts plus a $2,000.00 note to Kenneth Reaves. Defendant knew Debtor had no legal connection with Apple Annie's or 4400 Group, Ltd.

Mr. Williamson set up several meetings to discuss signing the third mortgage. At the earlier meetings Debtor refused to sign the third mortgage. Williamson continued to apply pressure. He told Debtor that the business would fail unless she signed the third mortgage. Williamson further told Debtor that his wife would help him if he was in a financial position similar to that of Kenneth Reaves.

Debtor hired an attorney to advise her on this matter. The attorney's law firm occasionally represents Defendant. Due to the conflict of interest the attorney advised Debtor only that she had no legal responsibility to pay the $17,000.00 in overdrafts or the $2,000.00 note and that Debtor did not have to sign the third mortgage. The attorney did not advise Debtor on whether she should sign the third mortgage or the effect on her homestead interest in the property.

On April 17, 1980, Debtor signed the third mortgage. Williamson did not advise Debtor about the effect of the provision in the mortgage where Debtor waived her homestead exemption. In fact, Williamson testified that he did not understand the effect of such a provision. Debtor testified that had she understood the effect of the provision she would not have signed the mortgage.

Defendant took the third mortgage to secure the $17,000.00 in overdrafts and the $2,000.00 note to Kenneth Reaves. Debtor had no legal obligation to pay the $17,000.00 in overdrafts or the $2,000.00 note.

Debtor received no money personally for executing the third mortgage. However, at the time Debtor signed the mortgage, she was unemployed and dependent solely upon her husband for her income.

In exchange for Debtor's signing the third mortgage, Defendant advanced money to pay the back taxes and two late mortgage payments due to the first mortgagee. Defendant also agreed to make sure that the salary Mr. Reaves drew from the business went directly to pay off the mortgages. Further, Defendant released SBA collateral that it held to Apple Annie's for reinvestment back into the business.

Debtor's debts listed in her bankruptcy petition are substantially the same as the debts Debtor owed on April 17, 1980. This Court finds that on April 17, 1980, Debtor was insolvent or became insolvent as a result of her signing the third mortgage.

## ISSUES

Debtor alleged that the third mortgage is avoidable as a preferential transfer under 11 U.S.C. Section 547 and as a fraudulent transfer under 11 U.S.C. Section 548. This Bankruptcy Court will not decide whether a preferential transfer occurred. The Court need only decide whether Debtor has standing to bring an 11 U.S.C. Section 548 action to avoid the third mortgage, and, if so whether the third mortgage is avoidable as an 11 U.S.C. Section 548 fraudulent transfer.

### (1) *Standing*

Whether Debtor has standing to bring an 11 U.S.C. Section 548 action to avoid the third mortgage.

Debtor's Counsel argued that 11 U.S.C. Section 522(h), in connection with 11 U.S.C. Section 522(g)(1), provided Debtor with the authority to bring the Section 548 action where the Trustee failed to do so. 11 U.S.C. Section 522(h) provides that

"(h) The debtor may avoid a transfer of property of the debtor or recover a set off to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section . . . 548, . . . and

(2) the trustee does not attempt to avoid such transfer."

11 U.S.C. Section 522(g) provides that,

"Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property;".

Defendant's Counsel argued that Debtor has no standing to bring the Section 548 action since Debtor's signing of the third mortgage was a voluntary transfer. Debtor's Counsel contended that Debtor did not voluntarily sign the third mortgage.

This Court specifically finds and holds that Debtor would be entitled under 11 U.S.C. Section 522(b) to exempt the residential realty that the trustee, or in this case, Debtor, may recover under 11 U.S.C. Section 550 as a result of the 11 U.S.C. Section 548 action to avoid the third mortgage. This Bankruptcy Court further finds and holds that Debtor did not conceal the real property in question upon which Defendant has a third mortgage. Thus, whether Debtor has standing to bring the Section 548 action to avoid the third mortgage depends entirely upon whether Debtor voluntarily transferred her interest in the real property by executing the third mortgage.

The Bankruptcy Code is silent on what a "voluntary transfer" is. The only legislative insight into what Congress meant by a "voluntary transfer" is where the House Judiciary Committee, commenting on Section 522(g), stated that,

"Subsection (g) gives the debtor the ability to exempt property that the trustee recovers under one of the trustee's avoiding powers if the property was involuntarily transferred away from the debtor (such as by the fixing of a judicial lien)

and if the debtor did not conceal the property." (H.R.Rep. 95–595, 95th Cong., 1st Sess. 362 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.)

Black's Law Dictionary, Revised Fourth Ed. (1968), defines voluntary as,

"Unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself. *Coker v. State*, 199 Ga. 20, 33 S.E.2d 171, 174. Done by design or intention, purpose, intended. *Nelson County v. Williams County*, [68] N.D. [56], 276 N.W. 265, 269. Proceeding from the free and unrestrained will of the person. *Brown v. McCulloch*, [24] Tenn.App. [324], 144 S.W.2d 1, 4. Produced in or by an act of choice. *Hartingh v. Bay Circuit Judge*, 176 Mich. 289, 142 N.W. 585, 587, Ann.Cas. 1915B, 520. Resulting from choosing. *Travelers' Protective Ass'n v. Jones*, 75 Ind.App. 29, 127 N.E. 783, 784. The word, especially in statutes, often implies knowledge of essential facts. *Sweeney v. Sweeney*, 96 Vt. 196, 118 A. 882, 26 A.L.R. 1066; *Choate v. State*, 19 Okl.Cr. 169, 197 P. 1060, 1063."

■ For purposes of this decision, this Bankruptcy Court holds that an 11 U.S.C. Section 522(g)(1)(A) voluntary transfer occurs when a debtor, with knowledge of all essential facts and free from the persuasive influence of another, chooses of her own free will to transfer property to the creditor. A voluntary transfer does not occur where a creditor has harassed, insulted, and shamed a debtor into transferring the property to the creditor. Nor has a voluntary transfer occurred where a creditor has concealed or failed to inform a debtor of essential facts necessary for the debtor to make an intelligent decision on whether to transfer the property to the creditor. This is especially true where a debtor can show that she would not have made the transfer had she been informed of all the essential facts.

■ This Bankruptcy Court holds that Debtor did not voluntarily transfer her interest in the real property to Defendant.

Here, Mr. Williamson, an employee and officer of Defendant, applied tremendous pressure to Debtor to sign the third mortgage. Williamson, and not the Debtor, continued to call and to set up meetings to discuss the third mortgage. When Debtor continued to refuse to sign, Williamson applied pressure. At a time when Debtor had marital problems, Williamson informed Debtor that unless she signed the third mortgage her husband's business would fail, and that Williamson's wife would have helped him if he were in a similar financial position. Debtor sought legal advice from an attorney who, due to a conflict, could not properly advise her on whether she should sign the mortgage. Finally, after about three and a half months, Defendant persuaded Debtor to sign the third mortgage.

In exchange for signing the third mortgage, Defendant paid the back taxes and two late mortgage payments past due to the first mortgagee. Further, Defendant agreed to make sure that the salary which her husband drew from the business went directly to pay the mortgages. Defendant's Counsel argued that Debtor, after considering Defendant's concessions and the fact that her income depended solely upon her estranged husband, made her own free decision to sign the third mortgage.

This Court carefully reviewed the testimony of the witnesses and concluded that Debtor signed the third mortgage as a result of the pressure applied by Defendant. Only after Defendant had applied such pressure as to break Debtor's spirit and convince her to sign, did Debtor ask for minor concessions. Further the concessions granted by Defendant were for the most part in Defendant's best interest also.

Further, Defendant failed to explain to Debtor the effect of the clause in the mortgage waiving Debtor's right to claim the homestead exemption against the third mortgage. The reason Williamson gave as to why he did not explain the effect of the clause was because he did not understand the effect of the clause himself.

Debtor testified that had she understood the effect of the clause she would not have

signed the third mortgage. By itself, Defendant's failure to explain the effect of the clause would not be sufficient to justify a holding that Debtor did not voluntarily transfer the property. But, when considered in light of the other evidence and, especially Debtor's reluctance to sign the third mortgage, this Bankruptcy Court must conclude that had Debtor been informed of the effect of the clause, she would not have signed the third mortgage.

This Bankruptcy Court holds that Debtor is entitled under 11 U.S.C. Section 522(h) to bring a Section 548 action to avoid the third mortgage as a fraudulent transfer. Debtor, being entitled to claim the property as exempt if the third mortgage is avoided, did not conceal the property and did not voluntarily transfer the property to Defendant.

### (2) *Fraudulent Transfer*

Whether Defendant's third mortgage is avoidable as a fraudulent transfer under 11 U.S.C. Section 548.

The relevant part of 11 U.S.C. Section 548 that Debtor is proceeding under provides that,

"(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred or became insolvent as a result of such transfer or obligation;".

This Court finds and holds that Debtor executed the third mortgage (April 17, 1980) within one year before the filing of Debtor's bankruptcy petition (June 27, 1980). Further, the Court finds and holds that Debtor was insolvent on April 17, 1980, or became insolvent as a result of the transfer.

The only question remaining is whether Debtor received less than a reasonably equivalent value in exchange for executing the third mortgage. 11 U.S.C. Section 548(d)(2)(A) defines value as,

"(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor . . .".

■ This Bankruptcy Court holds that Debtor received less than a reasonably equivalent value in exchange for signing and executing the third mortgage. Debtor had no legal obligation to pay the $17,000.00 in overdrafts or the $2,000.00 note to Kenneth Reaves. Debtor received no money, herself, as a result of the transfer, although Defendant did pay the back taxes and two late mortgage payments due to the first mortgagee. However, these payments by Defendant were only a fractional portion of the $20,000.00 third mortgage.

This Bankruptcy Court holds that Defendant's third mortgage on Debtor's real property is avoided as a fraudulent transfer under 11 U.S.C. Section 548.

This Bankruptcy Court further holds that Defendant is not entitled to retain a lien upon Debtor's real property for the value Defendant did provide by paying the back taxes and the two late mortgage payments due to the first mortgagee. This Bankruptcy Court finds that Defendant is not a good faith transferee as required by 11 U.S.C. Section 548(c). Debtor signed the third mortgage as a result of the coercion and pressure applied by Defendant. Where a creditor has coerced a debtor into transferring property the Court will not find that the creditor is a good faith transferee.

## CONCLUSION

Debtor has standing under 11 U.S.C. Section 522(h) to bring an action under 11 U.S.C. Section 548 to avoid the real estate mortgage as a fraudulent transfer. Debtor did not conceal the real property; Debtor is entitled under 11 U.S.C. Section 522(b) to claim an exemption in the real property if recovered by Debtor; and Debtor did not voluntarily transfer her interest in the

property where Defendant applied such pressure as to coerce Debtor into signing and where Defendant failed to inform Debtor about the effect of her waiving the right to claim a homestead exemption in the property.

Defendant's third mortgage is avoided as a fraudulent transfer under 11 U.S.C. Section 548. Debtor failed to receive a reasonably equivalent value in exchange for signing the third mortgage. Due to Defendant's actions in persuading Debtor to sign the mortgage, this Court holds that Defendant is not a good faith transferee and is not entitled to retain a lien under 11 U.S.C. Section 548(c) for any value that Defendant may have provided.

Debtor's Counsel shall submit an Order consistent with the foregoing. This Memorandum Decision shall constitute Findings of Fact and Conclusions of Law.