Jennie Deden Behles, Albuquerque, N. M., for defendant.

**In re Wanda Fay TACKETT, a/k/a Wanda F. Tackett and Wanda Tackett, Debtor.**

**Wanda Fay TACKETT, Plaintiff,**

v.

**John E. DIXON, Defendant.**

**Bankruptcy No. 81–00602 R A.**

**Adv. No. 81–0734 M.**

United States Bankruptcy Court, D. New Mexico.

May 24, 1982.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on March 24, 1982, on plaintiff's Complaint to Avoid Transfer and Offset Against Real Estate Contract. The facts are these: Plaintiff entered into an agreement to purchase real property from the defendant. The agreement required the plaintiff to pay $22,000.00 at closing, the balance of the purchase price being carried by the defendant on a real estate contract. At closing,

the plaintiff paid $18,000.00 and executed an additional promissory note in the amount of $4,000.00 payable prior to April 30, 1981. Within 60 days of the filing of the petition herein, the debtor paid the promissory note. At the time of such payment, the debtor either was insolvent or the payment of the promissory note rendered her insolvent. The debtor seeks to recover the $4,000.00 as a preferential transfer, or in the alternative, to offset such sum against the remaining balance due under the real estate contract. In the event the funds are recovered, the debtor claims them exempt. The defendant claims that the promissory note was secured pursuant to the terms of the real estate contract and that he is entitled to retain said payment.

■ We must first address the threshold question of whether a chapter 13 debtor has the avoiding powers of Section 544 of the Bankruptcy Code. Although there are cases which have decided the question both ways, this Court finds that the better-reasoned opinions are set forth in *In re Saberman*, 1 C.B.C.2d 671, 6 B.C.D. 146, 3 B.R. 316 (N.D.Ill.1980) and *Jacobs v. Paccar Financial Corp. (In the Matter of Jacobs)*, 11 B.R. 467 (W.D.Mo.1981). Accordingly, this Court finds as a matter of law that where the transfer meets the requirements set forth below, the chapter 13 debtor does have the avoiding power of a chapter 7 trustee.

In order for the plaintiff to avoid the transfer under § 522(h)(1) of the Bankruptcy Code and recover the $4,000.00 for her own benefit, the same conditions must be met which would allow plaintiff to exempt the property under § 522(g)(1).

Those conditions are that the transfer must not be a voluntary transfer of the property by the debtor and that the plaintiff has not concealed such property. The plaintiff and the defendant have agreed that there was no attempt made by the plaintiff to conceal the property. Therefore, the first question this Court must decide is whether the transfer was voluntary.

The Bankruptcy Code does not define the word voluntary. Those decisions which interpret § 522(g)(1), however, suggest that there is a spectrum with voluntary at one end, involuntary at the other, and various shades between. It is helpful to look at the facts of these previously decided cases in order to determine where the case before this Court fits.

In *In re Wilson*, 6 B.R. 333, 6 B.C.D. 1125, Bankr.L.Rep. ¶ 67,668 (M.D.Fla.1980), a debtor sought to exempt certain monies paid by him to his attorney for the preparation and filing of the debtor's voluntary petition. The attorney charged the debtor $1,500.00 plus the $60.00 filing fee. The trustee of the estate later challenged the reasonableness of this amount, and the Court ordered a refund by the attorney of $704.00 to the estate. The Court found that the payment made by the debtor to his attorney for services in connection with the bankruptcy was voluntary and refused to exempt the refunded money notwithstanding any legal obligation which the debtor had, or may have felt he had, to pay his attorney for services rendered.

Also deemed voluntary was the transfer considered in *Styler v. Local Loan Financial Services (In re Lanctot)*, 6 B.C.D. 1208, 6 B.R. 576 (D.Utah 1980). In that case, the loan company had loaned the debtors money to purchase motorcycles and the parties had signed a purchase-money security agreement. However, to properly secure the loan, the lien was to have been listed on the certificates of title of the motorcycles, and this was never done. The trustee in the subsequent bankruptcy moved to set aside the loan company's interest and preserve the lien for the estate. The debtors moved to intervene, claiming a valid exemption superior to the interest asserted by the trustee. The Court in *Styler* looked at the circumstances surrounding the purchase of the motorcycles and the signing of the purchase-money security agreements and noted only that the voluntary nature of the transfer was undisputed.

In *Reaves v. Sunset Branch, National Bank of South Dakota (In re Reaves)*, 7 B.C.D. 327, 8 B.R. 177 (S.D.1981), the debtor was separated from her husband and not

receiving support from him. Four months prior to the debtor's separation from her husband, a bank employee contacted the debtor and urged her to execute a third mortgage on her home in order to bail out her husband's failing business. The debtor had no legal connection with her husband's business, a fact which was known to the bank. The debtor at first refused to sign the third mortgage, but the bank continued to apply pressure. The bank representative told her that her husband's business would fail unless she signed the third mortgage and further told her that if he were in financial difficulties, his wife would help him. The third mortgage contained a provision waiving the debtor's homestead exemption which was never explained to the debtor and which the debtor did not understand. At the time the debtor signed, she was unemployed, and her sole support was her husband. Shortly thereafter, the debtor ceased receiving income from her husband, and filed bankruptcy. The Court found that the debtor was insolvent on the date of signing the third mortgage, or became insolvent as a result of the signing of the third mortgage. The Court discussed the voluntary requirement of § 522(g)(1) in conjunction with the debtor's attempt to avoid the third mortgage. The Court quotes the House Judiciary Committee comment which gave as its example of an involuntary transfer, the fixing of a judicial lien, and looked at Black's Law Dictionary which defines voluntary as "... unimpelled by another's influence, spontaneous, acting of oneself." *Black's Law Dictionary*, 4th Edition, 1946. The Court in *Reaves* ultimately defined voluntary as "... with knowledge of all essential facts and free from the pervasive influence of another ...", *Reaves, supra* at 329, 8 B.R. 177, and allowed the debtor to avoid the lien.

The precise question before us is whether the transfer of $4,000.00 by the plaintiff is deemed involuntary because the plaintiff thought she would lose her home if she did not pay it. The plaintiff has stated that the defendant has asserted that he was entitled to send a 30-day demand letter. However, the plaintiff stated in court that prior to this payment there was no threat from the defendant, indeed there was no contact at all. Further, the plaintiff does not contend that the defendant withheld essential information from her. The plaintiff apparently reached her own conclusion as to the secured status of the promissory note, and acted upon that conclusion. Accordingly, this Court finds that the payment to the defendant, Mr. Dixon, was a voluntary payment under the terms of § 522(g)(1) of the Bankruptcy Code.

Having found that the plaintiff's payment was voluntary under § 522(g), it follows that the plaintiff may not avoid the transfer under § 522(h).

Whether the $4,000.00 payment was secured by the terms of the real estate contract need not be determined.

An appropriate order shall enter.

### ORDER

IT IS HEREBY ORDERED that plaintiff's Complaint to Avoid Transfer and Offset Against Real Estate Contract be dismissed.