**In re David D. CORWIN and Bonnie J. Corwin, Debtors.**

**Bankruptcy No. 91–30501–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

Jan. 27, 1992.

Stuart A. Young, West Palm Beach, Fla., for debtor.

Don Pickett, West Palm Beach, Fla., for Beneficial Finance Co.

Irving Gennett, Boca Raton, Fla., trustee.

ORDER DENYING DEBTORS' MOTION TO AVOID TRANSFER OF PROPERTY PURSUANT TO 11 U.S.C. § 522(h)

ROBERT A. MARK, Bankruptcy Judge.

The matter before the Court is Debtors' Motion to Avoid Transfer of Property pur-

suant to 11 U.S.C. § 522(h). The Debtors seek to avoid a lien on their mobile home in favor of Beneficial Finance Company ("Beneficial"). The Court conducted an evidentiary hearing on April 23, 1991 and the parties submitted supplemental briefs thereafter. After consideration of the evidence and arguments, I find that the Debtors' motion must be denied. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052, *Fed.R.Bankr.P.*

## FACTS

On December 15, 1990, the Debtor, David Corwin, contacted Beneficial, which had previously loaned him $5,000.00 secured by a non-purchase money security lien on his household furniture. Mr. Corwin informed Beneficial's representative that he had sold the furniture and planned to file a Chapter 7 bankruptcy petition. The Debtor testified that the representative stated "that there would be some very serious legal ramifications" as a result of having sold the furniture. Transcript of April 23, 1991, testimony of David Corwin at page 7. The Debtor interpreted this statement as a threat of imprisonment although he admitted that Beneficial never specifically threatened him with incarceration.[1] Mr. Corwin further testified that after discussing the matter with his wife, he reapproached Beneficial and granted it a replacement security interest in their homestead, a mobile home. The Debtors did not receive any new money in exchange.

On February 26, 1991, the Debtors filed a Chapter 7 petition. On April 3, 1991 the Debtors filed this motion seeking to avoid Beneficial's lien.

## DISCUSSION

§ 522(h) provides the Debtors with standing to bring this motion. The provision provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

This section allows the Debtors to exercise the Trustee's § 547 avoidance powers if the property transferred is exempt pursuant to § 522(g)(1). Under § 522(g)(1), the Debtor may exempt property recovered by a trustee if the avoided transfer was not a "voluntary transfer" and the debtors did not conceal the property. Therefore, read together with § 522(g)(1), § 522(h) as applied in this case provides the Debtors with standing to avoid a transfer of property which the Trustee could have avoided as a preference pursuant to § 547(b) if the property (1) is exempt, (2) is not concealed by the Debtor, and (3) was not voluntarily transferred by the Debtor. *In re Echoles*, 21 B.R. 280, 281 (Bankr.D.Ariz.1982). *In re Reaves*, 8 B.R. 177 (Bankr.D.S.D.1981).

The lien on the Debtor's mobile home granted to Beneficial would have been avoidable as a preference under § 547. The lien secured an antecedent debt which was, at the time, unsecured since the Debtors had sold the original collateral. The lien was granted within ninety (90) days of the bankruptcy filing and, if not avoided, would allow Beneficial to receive more than it would receive as an unsecured creditor of this estate.

The contested issue here is whether the granting of the lien was "not a voluntary transfer" as that phrase is used in § 522(g)(1). If the transfer was voluntary, the Debtor cannot claim the value of the lien interest as exempt under § 522(g) and cannot utilize § 522(h) to avoid the lien. I find that the Debtors in the instant case failed to establish that the transfer was not voluntary and thus, lack standing under

---

1. *Question:* No one from Beneficial told you you were going to go to jail, did they, sir? *Mr. Corwin:* No, but the inference was there. That is what I thought that they meant. (Transcript, p. 11.)

§ 522(h) to exercise the Trustee's § 547 avoidance powers.

Neither the Bankruptcy Code nor the legislative history clearly explain what constitutes a "voluntary" transfer." *In re Seidel*, 27 B.R. 347, 351 (Bankr.E.D.Pa. 1983). Some cases addressing this issue have considered the definition of "voluntary" in *Black's Law Dictionary.* Under that definition, a transfer would not be voluntary if the Debtors either (1) were subjected to an outside influence which overcame their free will or (2) lacked knowledge of all facts essential to their decision to grant the transfer. *See In re Reaves*, 8 B.R. 177 (Bankr.D.S.D.1981).

▐ To establish that Beneficial's conduct and influence was sufficient to "overcome their free will", the Debtors had to prove that Beneficial harassed, insulted, or shamed them into making the transfer. *In re Echoles*, 21 B.R. 280, 281 (Bankr.D.Ariz. 1982). The evidence here was insufficient to establish that Beneficial's statements were intended to harass, insult or shame the Debtors when "serious legal ramifications" did in fact exist. Selling property in which Beneficial had possessed a security interest placed the Debtors at risk of being denied a discharge under 11 U.S.C. § 727(a)(2).[2] Selling Beneficial's collateral could also have provided Beneficial with facts to support a complaint to except its debt from discharge under § 523(a)(6).[3] Moreover, a "threat to take action to collect a debt by legal means does not constitute such coercion as to transform the voluntary grant of a security interest into an involuntary transfer of property." *In re Bloom*, 28 B.R. 571, 573 (Bankr.D.Or.1983).

The circumstances here are substantially different from those in cases finding transfers involuntary under § 522(g). Those cases have involved specific threats or repeated instances of harassment. In *In re Reaves*, the creditor repeatedly "applied

tremendous pressure" and specifically threatened that the debtor's husband's business would fail unless the debtor signed a mortgage. *In re Reaves*, 8 B.R. at 181. The creditor "had applied such pressure as to break [the] debtor's spirit and convince her to sign." *Id.* Similarly, in *In re Taylor*, 8 B.R. 578, 579 (Bankr. E.D.Pa.1981) the creditor "made repeated phone calls to the debtor, both at home and work" and, on one occasion, specifically threatened to "take away her home." The harassment persisted over a period of several weeks. *Id.* at 581. Finally, in *In re Johnson–Allen*, 69 B.R. 461, 470 (Bankr. E.D.Pa.1987) the State Probation Department specifically threatened the debtor with incarceration if he failed to pay a criminal restitution obligation.

By contrast, the evidence in this case is limited to one short conversation which the Debtors initiated and during which Beneficial made no specific threats. The Debtor husband may have perceived Beneficial's statement as a threat of imprisonment, but the Debtor's subjective interpretation of the phrase "serious legal ramifications" is insufficient to constitute the kind of harassing, abusive conduct that would render the transfer involuntary. *See In re Wernly*, 91 B.R. 702 (Bankr.E.D.Pa.1988) (defendant's conduct did not rise to level of fraud or extraordinary pressure to render the transfer involuntary); *In re Echoles, supra*, 21 B.R. at 280 (securing consumer loan with deed of trust was voluntary transfer).

Some courts have held transfers to be involuntary where (1) the debtor lacked essential facts related to the transfer, (2) the creditor to whom the transfer was made failed to inform the debtor of any essential facts within the creditor's knowledge, and (3) the debtor would not have made the transfer had he been aware of all the essential facts. *In re Seidel*, 27 B.R. 347,

---

**2.** § 727(a)(2) of the Bankruptcy Code provides the Court authority to deny a discharge to a Debtor who transfers property within one year of the filing of the petition with intent to delay, hinder, or defraud a creditor.

**3.** Under § 523(a)(6), a debt for willful and malicious injury by the debtor to another entity or to the property of another entity is excepted from discharge. This exception has been applied to cases in which a debtor willfully transfers collateral pledged to secure a loan. *See e.g. Matter of Petsch*, 82 B.R. 605 (Bankr.M.D.Fla.1988).

352 (Bankr.E.D.Pa.1983). There is no evidence here that Beneficial concealed any facts essential to the Debtors' decision to grant the security interest.

The Debtors claim in their brief that creditors routinely threaten debtors with untrue threats such as "their wages will be attached" and "they will be jailed." However, the Debtors have failed to show that any such untrue threats occurred here. The Debtors further argue that they must have acted under coercion in order to allow a lien on their homestead property "for absolutely nothing in return." However, the Debtors apparently granted the security interest so that Beneficial would forego pursuing its legal remedies. Even though the Debtors did not receive any cash consideration, "an agreement to forestall collection of a [debt] ... is adequate consideration to support a contract to grant a security interest in property." [4] *In re Bloom*, 28 B.R. 571, 573 (Bankr.D.Or.1983).

### CONCLUSION

To avoid the preferential lien on their mobile home, the Debtors were required to establish that the granting of the lien was not a voluntary transfer. The Debtors did not meet this burden. The statement by Beneficial's representative that the Debtors would face "some serious legal ramifications" if they sold the collateral pledged to Beneficial was not sufficient. The Debtors were not unduly coerced, harassed or threatened. Having failed to establish pursuant to § 522(g)(1) that the granting of the security interest was not voluntary, the Debtors lack standing under § 522(h) to set aside the lien as a preferential transfer. Debtors' Motion to Avoid Transfer is therefore denied.

DONE AND ORDERED.

---

4. The Court is not finding that Beneficial would have successfully defended an action to avoid the transfer as a preference under § 547 of the Bankruptcy Code based upon adequate consideration. Nevertheless, there were very real legal consequences that the Debtors were avoiding by offering new collateral. These consequences are relevant to my decision rejecting the argument that the Debtors must have been coerced.