In re Wilbur P. HOLLAR and
Ruth C. Hollar, Debtors.

Wilbur P. HOLLAR and Ruth
C. Hollar, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. B–93–11389C–7W.
Adv. No. 93–2087.

United States Bankruptcy Court,
M.D. North Carolina,
Winston–Salem Division.

April 28, 1995.

Wilbur P. Hollar and Ruth C. Hollar, pro se.

Thomas Holderness, Washington, DC, for U.S.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Bankruptcy Judge.

■ This adversary proceeding involves four separate claims by Wilbur and Ruth Hollar ("Debtors") against the United States ("Defendant"). Count I and Count IV of the complaint were dismissed earlier. The dismissal of Count I was not appealed, while the dismissal of Count IV was affirmed on appeal to the District Court. Count II also was dismissed by this court but, on August 8, 1994, the dismissal was vacated and this adversary proceeding was remanded by the District Court with instructions regarding the rehearing of the motion to dismiss Count II. On January 18, 1995, the court conducted a further hearing on Defendant's motion to dismiss Count II. The grounds relied upon by Defendant in its motion to dismiss is lack of standing on the part of Debtors to assert Count II. Both parties called witnesses and offered evidence on this issue. The court also heard cross-motions for summary judgment as to Count III of the complaint on January 18, 1995. For the reasons stated herein, the court has concluded that Defendant's motions to dismiss Count II and for summary judgment as to Count III should be granted.[1]

### I. Background.

Debtors filed a voluntary petition under Chapter 13 on April 29, 1993. After receiving two extensions of time to file their schedules, Debtors filed their schedules on June 16, 1993. Debtors submitted two proposed plans, neither of which was confirmable. On

1. Debtors have requested a jury trial on the merits of this adversary proceeding. The jury request does not prevent this court from hearing the motion to dismiss and, in doing so, resolving factual disputes, if any, in order to determine whether Debtors have standing to bring this action. "Standing is a threshold issue and fundamental to the court's subject matter jurisdiction." *U.S. v. 105,800 Shares of Common Stock*, 830 F.Supp. 1101, 1115 (N.D.Ill.1993). The authority of the court to make factual findings which are decisive of jurisdiction is undisputed. "Jurisdictional issues are for the court—not a jury—to decide, whether they hinge on legal or factual determinations." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981). The court may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction. *Id.* This authority extends to the bankruptcy court. Even after a proper demand for jury trial has been made, the bankruptcy court may supervise discovery, conduct pretrial conferences, rule on pending motions and determine dispositive motions. *In re M & L Business Machine Co., Inc.*, 159 B.R. 932, 934 (D.Colo.1993).

August 10, 1994, the court granted Debtors' motion for voluntary conversion to Chapter 7.

This adversary proceeding was filed on May 23, 1993, while Debtors were in Chapter 13. In Count II Debtors attempt, under 11 U.S.C. §§ 548 and 522(h), to set aside as a fraudulent conveyance an Internal Revenue Service tax sale of certain real property.[2] In Count III Debtors seek a determination that any taxes assessed for 1989 and 1990 are dischargeable. This court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a), 157(b)(1), (b)(2)(A), (B), (H) and (I).

## II. Count II: The Fraudulent Conveyance Claim.

On December 10, 1992, the Internal Revenue Service ("IRS") conducted a tax foreclosure sale at which real property allegedly owned by Debtors was auctioned and sold to the highest bidder. The subject property is a vacant lot on Round Hill Circle in Kernersville, North Carolina, known as Lot 4 in Kynwood Subdivision. This lot is adjacent to Lot 3 in Kynwood Subdivision upon which Debtors' residence is situated. Debtors seek to set aside this sale as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(2) on the theory that the property was sold for less than its "reasonably equivalent value." Section 548 authorizes the Trustee, and not the debtor, to avoid transfers. 11 U.S.C. § 548(a). However, under the conditions specified in 11 U.S.C. § 522(h), a debtor may invoke § 548 to avoid a transfer if the trustee does not attempt to avoid the transfer. In the District Court, Judge Tilley pointed out that Debtors in the present case have stand-

ing to sue under this section only if they meet every element of 11 U.S.C. § 522(h), and remanded this case for a determination in this court as to whether Debtors do so. One of the elements under § 522(h) is that a debtor may avoid a prepetition transfer of property only "to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the Trustee had avoided such transfer." Thus, in order to have standing to proceed with the merits of Count II, Debtors must establish that they could have exempted the subject property if the trustee had avoided the sale and brought the vacant lot into the estate.

Since North Carolina has "opted out" of the exemption scheme embodied in § 522(d) of the Bankruptcy Code, the exemptions to which Debtors are entitled are determined by North Carolina law. 11 U.S.C. § 522(b)(1); N.C.Gen.Stat. § 1C–1601(f); *Berry v. First Citizens Bank & Trust Co.*, 33 B.R. 351 (Bankr.W.D.N.C.1983). Under the North Carolina exemption statute:

> Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of his creditors: (1) The debtor's aggregate interest, not to exceed ten thousand dollars ($10,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence.

N.C.Gen.Stat. § 1C–1601(a). This exemption frequently is referred to as the homestead exemption. Under this exemption a married couple may claim as exempt up to $20,000.00 of value in the residence. Under N.C.Gen.Stat. § 1C–1602, a debtor may elect to take the personal property and homestead exemptions provided in Article X of the Con-

---

**2.** It is undisputed that the property, consisting of a vacant lot located in Kernersville, was sold at the tax sale and that it was purchased by Mr. and Mrs. Meyers and has been deeded to them. The United States did not purchase the lot and has never owned it. Although Debtors have sued to set aside the transfer and recover the property, the only defendant in the case does not hold title to the property and has never held title. Therefore, it is difficult to see how Debtors could obtain the relief they seek in this proceeding. However, § 550 provides that "to the extent that a transfer is avoided under section ... 548 ... the trustee may recover, for the benefit of the

estate, the property transferred, or, if the court so orders, *the value of* such property, from ... the initial transferee of such transfer *or the entity for whose benefit such transfer was made ...*" This language is broad enough to include Defendant in this case, and, therefore, this case may be regarded as one pursuant to § 550 to recover the value of the lot—otherwise, the complaint would not state a claim since Debtors could not set aside a conveyance and recover possession of real property in a case in which the only defendant has never had title to nor possession of the real property in question.

stitution of North Carolina instead of the exemptions provided in N.C.Gen.Stat. § 1C–1601. The North Carolina Constitution provides in Article X, § 2 that:

> Every homestead ... to a value fixed by the General Assembly but not less that $1,000 ... owned and occupied by a resident of the State, shall be exempt from sale under execution or other final process obtained on any debt.

■ Debtors contend that the vacant lot is part of their "residence" and that they are entitled to exempt the lot as part of their homestead exemption. The court must determine whether Debtors would have been entitled to exempt the vacant lot in question if the trustee had avoided the tax sale and recovered the vacant lot in question. 11 U.S.C. § 522(g) and (h). In making this determination the court is cognizant that the exemption laws must be liberally construed in favor of the debtor. *In re Laughinghouse*, 44 B.R. 789, 791 (Bankr.E.D.N.C.1984).

A debtor who does not fulfill either the statutory or constitutional requirements cannot claim a homestead exemption with respect to real property under North Carolina law. The basic requirements for claiming an exemption with respect to the homestead are: (1) that the debtor is a North Carolina resident;[3] (2) that debtor own the property as to which the exemption is claimed; and (3) that the property be the residence of the debtor. N.C.Gen.Stat. § 1C–1601; N.C. Const. art. X, § 2. In addition, under the statutory and constitutional exemption schemes, the amount of the available exemption is limited by a specified dollar value. *Id.*

Even when the exemption statutes are construed liberally in favor of Debtors, the evidence in this case demonstrates that the Debtors could not have exempted the property that is the subject of this dispute and therefore lack standing to bring this action under § 522(h) because Debtors cannot meet the requirements of § 522(g)(1) which are incorporated into § 522(h).

**a. Ownership of the Real Property.**

■ Under North Carolina law, an individual must have an ownership interest in residential property in order to claim a homestead exemption in the property. *In re Love*, 42 B.R. 317 (Bankr.E.D.N.C.1984) *aff'd*, 54 B.R. 947 (E.D.N.C.1985); N.C. Const. art. X, § 2(1) ("homestead ... owned and occupied by a resident of the State"); N.C.Gen.Stat. § 1C–1604(a) (Property allocated to the debtor as exempt is free of the enforcement of the claims of creditors ... for so long as the debtor owns it").

■ The undisputed evidence reflects that Debtors in this case did not own the vacant lot in question at the time of the tax sale and for that reason were and are precluded from claiming an exemption with respect to the lot. The facts are that on September 2, 1992, more than three months before the tax foreclosure sale, Debtors conveyed both their residence and the vacant lot to an entity known as Sandpiper Trust. The deed from Debtors to Sandpiper Trust was duly recorded in the office of the Register of Deeds of Forsyth County.[4] This duly recorded, general warranty deed divested Debtors of ownership of the vacant lot in question in this case. Following the recordation of the deed, the property no longer was owned by Debtors and no longer property in which they could claim an exemption.[5]

The additional facts which are pertinent likewise are not disputed. Approximately three months after the deed to Sandpiper Trust was recorded, the tax foreclosure sale was held on December 10, 1992. Approximately four months later, on April 29, 1993, Debtors filed for relief under Chapter 13. Thereafter, on August 10, 1994, Debtors' case was converted to a Chapter 7 case. The

---

**3.** There appears to be no dispute that the Hollars are North Carolina residents.

**4.** The deed was offered into evidence by the United States and received without objection. Debtors offered no evidence of any subsequent conveyance of this property.

**5.** Even if Debtors held a possessory interest in the property, they would have been unable to claim ownership for purposes of the homestead exemption. *See In re de Kleinman*, 172 B.R. 764, 771–72 (Bankr.S.D.N.Y.1994) (under New York law, beneficial or possessory interest is not sufficient for the creation of a homestead exemption that requires ownership).

trustee appointed in the Chapter 7 case has not sought to avoid the tax sale or the conveyance to Sandpiper Trust in order to bring the vacant lot back into the bankruptcy estate of the Debtors.

■ Under § 522(g), a debtor may exempt "property that the trustee recovers" if the transfer of the property by the debtor was not voluntary and the debtor did not conceal the property. *See In re Corwin,* 135 B.R. 922 (Bankr.S.D.Fla.1992). In order for the trustee in this case to "recover" the vacant lot, he would have to avoid both the voluntary transfer to Sandpiper Trust and the tax sale. In fact, in order to have standing to attack the tax sale, the trustee first would have to show that he was entitled to avoid the earlier deed to Sandpiper Trust. Otherwise, as of the time of the tax sale, neither Debtors, the estate or the trustee would have any interest in the vacant lot. This means that if the trustee recovered the vacant lot, of necessity, he would have avoided a voluntary conveyance by Debtors. It follows that Debtors could not have exempted the property in question pursuant to § 522(g)(1) if the property had been recovered by the trustee. It also follows that Debtors therefore do not have standing under § 522(h) to maintain an action to avoid the sale of the vacant lot at the tax sale because, as a result of their earlier voluntary conveyance of the property to Sandpiper Trust, they are unable to show that they "could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer...."

### b. Value Limitation.

■ Even in the absence of Debtors' prior conveyance to Sandpiper Trust, Debtors still would be unable to exempt the vacant lot and still would lack standing to bring Count II. The North Carolina exemption statute permits a debtor to exempt the "debtor's *aggregate interest, not to exceed ten thousand*

dollars *($10,000) in value,* in real property." N.C.GEN.STAT. § 1C–1601(a) (emphasis added). A debtor thus is entitled to claim as exempt a defined aggregate amount of value or equity, not the actual property. *See* N.C.GEN.STAT. § 1C–1601(a)(1);[6] N.C. CONST. art. X, § 2. Under the statute, Debtors cannot claim an exemption in more than $20,000.00 of aggregate interest in their residential property—representing $10,000.00 for each of the codebtors. The amount allowed under the North Carolina Constitution is $1,000.00 per individual. Any excess equity above the allowable exemption amount may be reached by lien creditors or the trustee. In order to examine the amount of Debtors' interest or equity in the present case, the court has looked to the information submitted by Debtors themselves in their schedules and statement of financial affairs which were submitted under penalty of perjury.

■ The schedules, which were received into evidence without objection, may be treated as affidavits in this proceeding. FED.R.CIV.P. 43(e); *In re Mohring,* 142 B.R. 389, 393 n. 10 (Bankr.E.D.Cal.1992). It is incumbent upon the debtor to prepare schedules completely, carefully and accurately. *Mohring, supra* at 394; *see also In re New American Food Concepts, Inc.,* 70 B.R. 254, 260 (Bankr.N.D.Ohio 1987) ("The Court and a debtor's creditors should have reasonable comfort and reliance upon the financial information provided by a debtor when filing a petition for relief in a bankruptcy proceeding"). They may be amended and corrected if they are incomplete or inaccurate; amendments are liberally granted by the court. FED.R.BANKR.P. 1009(a); *Mohring, supra* at 394. However, in the absence of amendment, debtors are bound by the contents of their schedules.

In their schedules,[7] Debtors listed two parcels of real property. First, they listed the

---

6. When N.C.GEN.STAT. § 1C–1601 was enacted in 1981, the allowable real property exemption was $7,500.00 per individual. In 1991, this section was amended to raise the individual exemption to $10,000.00. If the homestead exemption were the property itself and not in the value of debtor's interest in the property, it would seem unnecessary to increase the amount of the exemption.

7. The court accepts the values listed in the schedules as representing the market value of these two parcels. Debtors were granted two extensions of time to file their schedules, and while they amended them on July 2, 1993, to add several unlisted assets, they did not amend the values listed for the real property. There is no indication that Debtors contest these values. The

residence (Lot 3) with a stated market value of $128,600.00, exceeding the balance owed on the two deeds of trust which encumber the property by $40,740.00. They also listed the vacant lot (Lot 4), with a present market value of $18,700.00, which was not subject to a mortgage lien. Thus, according to the values provided by Debtors themselves, they had $59,440.00 in equity above the mortgages on their residence. This includes more than $20,000.00 of equity in Lot 3 alone (which contains the dwelling in which Debtors reside). Under North Carolina exemption law, they could claim a maximum exemption in $20,000.00 of their interest in real property that they owned and used as a residence. If the lots were combined and Debtors used the entire amount of their residential real property exemption, Debtors would have had $39,440.00 remaining after exempting both the residence and the adjacent vacant lot. This amount would have been available for judgment lien creditors, including the Internal Revenue Service.

The North Carolina statute discusses the procedure for satisfying judgments in such situations in the context of the constitutional exemptions:

> If the value of the property in which the debtor claims his constitutional exemptions is in excess of his exemptions, the clerk, in an execution, may order the sale of the property with the proceeds of the sale being distributed first to the debtor to satisfy his exemption and the excess to be distributed as ordered.

N.C.Gen.Stat. § 1C–1602. This section demonstrates that the debtor may claim as exempt an interest in the property up to a specified value, but may not protect the property from creditors when the value of the property exceeds the debtor's available exemption. Since Debtors could only claim $20,000.00 of their $59,440.00 interest in these two lots under their homestead exemption, they could not claim the *property*, i.e., the vacant lot as exempt. Therefore, for this additional reason, Debtors lack standing to bring this action.

### c. Property used as residence.

The statutory and constitutional exemption schemes also require that the property in which a debtor seeks to claim an exemption be used as the residence. At the dismissal hearing, the parties disagreed about whether the residence and vacant lot should be treated separately or as a single unit for the homestead exemption analysis. Defendant contends that the two parcels are separate.[8] Defendant is correct that, if the two parcels are treated separately, the vacant lot could not be exempted under any circumstances since the North Carolina exemption statute limits the exemption to real property that "the debtor uses as a residence." Debtors argue that the adjacent vacant lot serves integral residential purposes and is a part of their homestead.[9] They claim that, if the tax sale were set aside as a fraudulent transfer, they could exempt the entire two tracts as their homestead. However, the court need not decide this issue because, for the reasons already stated, Debtors could not exempt the lot whether or not it is combined with the lot containing Debtors' residence.

### III. Count III: Dischargeability of Tax Liability.

 In Count III, Debtors seek a declaration that their federal income taxes for

relevant portion of Debtors' schedules are listed below:

SCHEDULE A
REAL PROPERTY AND MOBILE HOMES

| Description | Total Amount of Debt | Present Market Value |
|---|---|---|
| Residence, one-story ranch, full basement | $79,560.00 (first mortgage) | $128,600.00 |
| | $8,300.00 (second mortgage) | |
| Vacant Lot | -0- | $18,700.00 |

8. The government supported this argument by showing that the residence was pledged independently as collateral for a loan while the vacant lot remained unencumbered, that Debtors listed the tracts separately on their schedules and statements to the Internal Revenue Service, and that Forsyth County treated them separately for purposes of property taxes and land records.

9. Debtors testified that the lots were purchased as one unit in 1983 and that the vacant lot is used for residential purposes such as storing firewood, parking a car, and for family recreation.

1989 and 1990 are dischargeable in bankruptcy. Defendant contends that, as Chapter 7 debtors, the Hollars must pay these taxes as priority claims under 11 U.S.C. § 507(a)(8). This issue is before the court on cross-motions for summary judgment.

Summary judgment is appropriate when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party makes a sufficient showing, the non-moving party must present affirmative evidence demonstrating that there are no genuine issues of material fact which must be resolved before its claim can be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1987). If the non-moving party fails to make such an affirmative showing and there is no genuine issue of material fact, summary judgment is appropriate. FED. R.CIV.P. 56(e).

The relevant facts are undisputed. Debtors filed their Chapter 13 petition on April 29, 1993, and later voluntarily converted to Chapter 7.[10] After a request for an automatic extension was filed, Debtors' 1989 federal income tax return was due on August 15, 1990.[11] Their 1990 federal income tax return was due on April 15, 1991.

Priority tax claims under section 507(a)(8) are not dischargeable in Chapter 7 cases. 11 U.S.C. § 523(a)(1)(A). Under Chapter 7,

federal tax claims receive priority status provided that they are due within three years (including extensions) of the filing of the petition in bankruptcy. 11 U.S.C. § 507(a)(7)(A)(i) (1994). As the due date for both of the returns was within three years of the petition in bankruptcy, the tax liabilities for 1989 and 1990 are priority claims which are excepted from discharge under 11 U.S.C. § 523(a)(1)(A).

There is no genuine issue of material fact relevant to Count III and the United States is entitled to judgment as a matter of law. Therefore, summary judgment will be entered in favor of the United States as to Count III. An order consistent with this opinion will be entered contemporaneously herewith.

### ORDER

For the reasons stated in the Memorandum Opinion filed contemporaneously with this order, it is ORDERED, ADJUDGED AND DECREED as follows:

(1) Defendant's motion to dismiss Count II of plaintiffs' complaint shall be and the same hereby is granted and Count II is hereby dismissed with prejudice;

(2) Defendant's motion for summary judgment as to Count III of plaintiffs' complaint shall be and the same hereby is granted and Count III is hereby dismissed with prejudice; and

(3) Plaintiffs' motion for summary judgment shall be and the same hereby is denied.

---

**10.** The voluntary conversion of the case from one under Chapter 13 to a Chapter 7 liquidation does not change the date of filing the petition, the commencement of the case, or the order for relief. 11 U.S.C. § 348.

**11.** The Hollars' federal tax returns for 1989 and 1990 were admitted at a prior hearing in this adversary proceeding and are a part of the record in this case.